DAVID BRAGLIA, Plaintiff-Appellant, v. SAMPSON CEPHUS *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 85—2623

Opinion filed July 29, 1986.

Robert F. I. Conte, Janet A. Pioli, and Charles A. Boyle, all of Chicago (David A. Novoselsky, of counsel), for appellant.

Robert S. Soderstrom, Lyndon C. Molzahn, and Sara E. Cook, all of McKenna, Storer, Rowe, White & Farrug, of Chicago, for appellees.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff, David Braglia, brought this action seeking to recover damages for injuries sustained in a motor-vehicle accident on March 10, 1979. On July 31, 1984, the motion judge entered an order of default against the defendants for failure to answer the first amended complaint. The default order was vacated by the trial court on March 11, 1985, and the matter proceeded to trial on all issues. After trial, the jury returned a verdict in favor of plaintiff and against defendants. It found that plaintiff sustained damages in the sum of $400,000 and that plaintiff's own comparative fault was 81.25%. Plaintiff's recoverable damages were assessed at $75,000. Plaintiff filed this timely appeal.

Plaintiff's principal assignment of error is that the trial court wrongfully vacated the default order previously entered by the motion judge. Plaintiff also contends that the jury's finding that plaintiff was 81.25% comparatively negligent is against the manifest weight of the evidence, and that the trial court erred in refusing to admit into evidence a statement made by a deceased defendant to his insurance carrier.

Plaintiff's first amended complaint was filed on August 17, 1983. Except for the addition of the Illinois vehicle code citations to specific allegations of negligence or wilful and wanton misconduct, it was substantially identical to the original complaint. The defendants had an answer on file to the original complaint, which can be characterized as a stock defendant's answer denying the essential allegations of the complaint.

Defendants failed to answer the first amended complaint within the 28 days provided for in the August 17, 1983, order. On May 31, 1984, plaintiff moved for a default against the defendants for failure to answer. A hearing was held on July 3, 1984, before Judge Brian Duff. Although the defense attorney's failure to plead in a timely manner was improper, he moved to have the original answer stand as the answer to the first amended complaint. Judge Duff denied the request, entered a default order against the defendants, and ordered that the case be set for a prove-up of plaintiff's damages. Defendants' motion to vacate the default was denied on October 30, 1984.

On November 29, 1984, additional counsel entered their appear-

ance for defendants. In addition to filing a timely notice of appeal from Judge Duff's order of default, they filed motions before Judge Edwin Berman of the law division for leave to file an answer *instanter* and to vacate the default. He transferred the motions to Judge Duff. On December 18, 1984, defendants filed a motion before the presiding judge of the law division suggesting the death of defendant Shelly and to vacate the default. These motions were also transferred to Judge Duff.

Recognizing that the default order was not appealable, the defendants withdrew their notice of appeal. On February 7, 1985, a hearing was held before Judge Duff, who again refused to vacate the default order. On March 11, 1985, the matter was set for prove-up before Judge Walter Kowalski.

On motion of defendants, Judge Kowalski vacated the default order and allowed defendants to file their answer to the first amended complaint. It was essentially identical to the original answer but also contained an affirmative defense of comparative negligence. The court offered plaintiff additional time to prepare, which was declined, and the case proceeded to trial.

## I

■ Judge Duff's default entered on July 3, 1984, was an interlocutory order because it did not "terminate the litigation between the parties on the merits of the cause, so that, if affirmed, the trial curt is only to proceed with the execution of the judgment." (*Richichi v. City of Chicago* (1964), 49 Ill. App. 2d 320, 324, 199 N.E.2d 652, *appeal denied* (1964), 30 Ill. 2d 627.) There must be a finding of damages before a default order becomes a final judgment. (*Bruno Benedetti & Sons, Inc. v. O'Malley* (1984), 124 Ill. App. 3d 500, 503, 464 N.E.2d 292, *appeal denied* (1984), 101 Ill. 2d 563.) The law is clear that interlocutory orders can be modified or vacated at any time prior to judgment, and it is permissible to have the same motion considered more than one time prior to judgment. *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 121, 382 N.E.2d 1217.

■ The default order in this case is subject to section 2—1301(e) of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1301(e).) A motion to set aside a default is not a motion under section 2—1401, which governs relief from final judgments. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401.) Therefore, there is no requirement that the motion on its face show due diligence or a meritorious defense. *Ruggiero v. Attore* (1977), 51 Ill. App. 3d 139, 143, 366 N.E.2d 470, *appeal denied* (1977), 66 Ill. 2d 642.

*Widicus v. Southwestern Electric Cooperative, Inc.* (1960), 26 Ill.

App. 2d 102, 108-09, 167 N.E.2d 799, *appeal dismissed* (1960), 19 Ill. 2d 626, the leading case interpreting the forerunner to section 2—1301(e), held: "The question of whether or not a court should set aside a default should be so resolved as to do substantial justice between the parties with the idea in mind of carrying out, insofar as it is possible, the determination of matters upon their merits. *** The entering of a default is one of the most drastic actions a court may take to punish for disobedience of its commands. *The court has other powers which are ample in most instances.* In our judgment, a default should only be condoned when, as a last resort, it is necessary to give the plaintiff his just demand. It should be set aside when it will not cause a hardship upon the plaintiff to go to trial on the merits." (Emphasis added.)

As previously noted, an answer was filed to the original complaint. The first amended complaint was essentially identical except for the addition of statutory citations regarding the Illinois Vehicle Code. The defendants' request to adopt the original answer as their answer to the amended complaint put the plaintiff on notice that there was no change in the theory of the defense.

■ When plaintiff instituted this action in 1979, Illinois did not recognize the doctrine of comparative negligence. In 1981, while this case was pending, the Illinois Supreme Court held that comparative negligence shall apply to all trials commencing on June 8, 1981, or thereafter. (*Alvis v. Ribar* (1981), 85 Ill. 2d 1, 28, 421 N.E.2d 886.) All litigants, including the parties to this case, were put on notice that the doctrine of comparative negligence would be applied to their trials. This trial commenced on March 13, 1985. At that time, a defendant was not required to plead comparative negligence as an affirmative defense. As of September 20, 1985, however, defendants would have been required to plead comparative negligence as an affirmative defense because of an amendment to section 2—613(d) of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—613(d).) Plaintiff had no reason to believe that the defendants would not invoke the doctrine of comparative negligence after the Illinois Supreme Court's decision in *Alvis*. The answer to the amended complaint did not change the claims of defendants, and plaintiff was not misled or prejudiced in the preparation of this case for trial.

Because the default order was based on defendants' failure to answer and not based on any matter dealing with discovery, the cases cited by plaintiff dealing with failure to comply with discovery are not applicable.

The record reveals that the trial court, upon vacating the default, offered to postpone the trial to be sure that plaintiff was adequately

prepared. However, plaintiff insisted that jury selection begin on the same day the default was vacated. Under these circumstances, there could be no surprise or prejudice.

In his reply brief, plaintiff concedes "that interlocutory orders can be modified or vacated at any time prior to judgment and that a motion previously denied may be reconsidered more than one time prior to judgment" under authority of *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 382 N.E.2d 1217. However, plaintiff contends that the trial judge abused his discretion in vacating the default. We disagree. The trial court's action was consistent with the orderly administration of justice. It was consistent with the law of this State and a proper exercise of discretion.

## II

While we agree that the trial court properly vacated the default order, we do not condone the conduct of the original counsel for defendants. Plaintiff's amended complaint was filed on August 17, 1983. A responsive pleading was due in 28 days. It was not filed. In fact, it was never filed by original counsel in spite of the fact that appearances were made before a number of judges, first to avoid default, then to vacate the default. When additional counsel for defendants came into the case on November 29, 1984, they immediately asked for leave to file an answer *instanter*. At oral argument, counsel for defendants conceded that the preparation of the answer to the amended complaint was a routine matter that could be competently handled by a relative novice at the bar or even by a law clerk with minimum supervision.

Plaintiff, his counsel, and the already overburdened court system in Cook County were put through substantial inconvenience and aggravation by the conduct of counsel for which there appears to be no rational explanation. As noted above, in *Widicus v. Southwestern Electric Cooperative, Inc.* (1960), 26 Ill. App. 2d 102, 108-09, 167 N.E.2d 799, *appeal dismissed* (1960), 19 Ill. 2d 626, the court noted that it has powers other than default to punish those who disobey its commands. In this case, the trial court could have assessed fees and costs against defendants or their counsel.

Section 2—1301(e) of the Code of Civil Procedure governs the setting aside of defaults. It states that the court may vacate a default "upon any terms and conditions that shall be reasonable." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1301(e).) The Historical and Practice Notes state that "as the language of the section suggests, a trial court might well set aside a default judgment and yet impose sanctions such as

payment of costs and expenses upon the party who failed to appear or upon his attorney." (Ill. Ann. Stat., ch. 110, par. 2—1301(e), Historical and Practice Notes, at 402 (Smith-Hurd 1983).) Indeed, we have so held that attorney fees can be assessed as a condition for an order to vacate the default. *Bachewicz v. American National Bank & Trust Co.* (1985), 135 Ill. App. 3d 294, 300, 482 N.E.2d 95.

The conduct of defendants' original counsel caused the case to be delayed, increased the costs and fees incurred by plaintiff, and abused the limited recourses of the judicial system. We therefore remand this matter to the trial court for the purpose of conducting a hearing to determine an appropriate award of fees and costs to plaintiff by original counsel, his employer, or both.

### III

Plaintiff does not advance any argument disputing the adequacy of the $400,000 jury verdict. Rather, his sole dispute is with the jury's finding that the plaintiff was 81.25% comparatively negligent.

The record reveals that on March 10, 1979, defendant Sampson Cephus was operating a tractor-trailer in a westerly direction on 159th Street. He stopped in the right lane at the intersection of 159th Street and Oak Park Avenue in Bremen Township. There is a dispute as to whether he stopped for a traffic signal or because his vehicle broke down. The vehicle was owned by defendant Richard A. Shelly, d/b/a Richard A. Shelly Mail Transport.

When Cephus reached the intersection, the light was red. Cephus took the opportunity to call his employer, defendant Shelly, to tell him about an air leak in the equipment. While he was on the radio, he was struck from behind by plaintiff.

Plaintiff testified that he also was driving in a westerly direction toward the intersection when the light turned green. After he came over a rise in the road, he saw the truck parked in the right hand lane. Plaintiff saw the truck too late to brake or swerve, and he ran into the back of the trailer. Plaintiff stated that he believed that the lights were not working on the trailer.

A third party, Joseph Graaman, was at the scene when the accident occurred. Graaman testified that he came within 50 to 100 feet of the truck before he saw it and changed lanes to avoid hitting it. Graaman offered his assistance because he though the truck was broken down. Cephus told him that he had a radio and was calling his employer. As they were talking, Graaman heard a crash—plaintiff had run into the rear end of the trailer.

State policeman Jeffrey Vlcek investigated the accident, although

his recollection of it was hazy and inconclusive. It was undisputed that Cephus had not put any flares or warning lights on the road, but if the truck was not broken down, there would be no need to do so.

The evidence at trial established that plaintiff had been awake for 20 hours, since 5:45 a.m. the previous morning, and that he had only had 5½ hours of sleep the previous night. He had worked all day as a laborer. He had been out for the evening with his friends and was returning home.

■ Plaintiff argues at length about the culpability of defendant Cephus for failing to put out flares or other warning devices. Whether defendant failed to put out adequate warnings is a question of liability, not comparative fault. Such argument has no bearing on the propriety of the jury's assessment of comparative fault.

In *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, our supreme court adopted the doctrine of comparative fault. In reaching its decision, the court said that, "The 'pure' form of comparative negligence is the only system which truly apportions *damages* according to the relative fault of the parties and, thus, achieves total justice." (Emphasis added.) (85 Ill. 2d 1, 27, 421 N.E.2d 886.) The court, in *Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 122-23, 454 N.E.2d 197, admonished that by adopting comparative negligence, it held that "[i]n return for allowing a negligent plaintiff to recover, this court said fairness requires that a plaintiff's damages be 'reduced by the percentage of fault *attributable to him.*' " (Emphasis in original.)

■ On review, then, the standard is whether the finding of plaintiff's comparative fault was against the manifest weight of the evidence. (*Bofman v. Material Service Corp.* (1984), 125 Ill. App. 3d 1053, 1061, 466 N.E.2d 1064.) A verdict is against the manifest weight of the evidence "where it is palpably erroneous and wholly unwarranted [citation], is clearly the result of passion or prejudice [citation], or appears to be arbitrary, unreasonable, and not based upon the evidence [citation]. When considering whether a verdict was contrary to the manifest weight of the evidence, a reviewing court must view the evidence in the light most favorable to the appellee. [Citation.]" *Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 412, 476 N.E.2d 1232.

Illinois courts have noted that "[t]here is a duty to keep a safe lookout to avoid colliding with a vehicle ahead and to take into account the prospect of having to stop suddenly." (*Droese v. Fleming* (1981), 93 Ill. App. 3d 781, 784, 417 N.E.2d 855.) In this case, the jury obviously decided that plaintiff contributed to the accident. The fact that plaintiff suffered from fatigue due to lack of sleep and heavy physical labor, exceeded the posted speed limit, and did not see the tractor-trailer un-

til he was about to crash into it, supports the conclusion that the jury's finding of plaintiff's comparative negligence was not against the manifest weight of the evidence.

## IV

Plaintiff's final argument is that the trial court erred in refusing to admit into evidence a statement made by defendant Richard A. Shelly, who was deceased at the time of trial. The statement was made by Shelly to his insurer about six weeks after the accident, in April 1979. The statement was submitted to the court for *in camera* review. Thereafter, plaintiff requested to use the statement in evidence. The court refused and contemporaneously granted defendants' motion for a protective order, which confirmed that the statement was protected by the attorney-client privilege.

In *People v. Ryan* (1964), 30 Ill. 2d 456, 197 N.E.2d 15, our supreme court held that communications between an insured and insurer, where the insurer is under an obligation to defend, is privileged. (30 Ill. 2d 456, 460, 197 N.E.2d 15.) The fact that Shelly's statements were made to a nonlawyer is not dispositive, for the court reasoned:

> "[B]y the terms of the common liability insurance contract, the insured effectively delegates to the insurer the selection of an attorney and the conduct of the defense of any civil litigation. The insured is ordinarily not represented by counsel of his own choosing either at the time of making the communication or during the course of litigation. Under such circumstances we believe that the insured may properly assume that the communication is made to the insurer as an agent for the dominant purpose of transmitting it to an attorney for the protection of the interests of the insured." (30 Ill. 2d 456, 460, 197 N.E.2d 15.)

The record is also clear that defendants did not waive the privilege because they gave plaintiff a copy of the statement subject to a protective order. *Newton v. Meissner* (1979), 76 Ill. App. 3d 479, 498, 394 N.E.2d 1241.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and remanded in part.

Affirmed in part; remanded in part.

STAMOS and SCARIANO, JJ., concur.