ROBERT L. ANDREASEN *et al.*, Plaintiffs and Counterdefendants-Appellees, v. SUBURBAN BANK OF BARTLETT, f/k/a SB Bank, Defendant and Counterplaintiff-Appellee (Law Offices of Frederic F. Brace, Jr., Respondent-Appellant; Gromer, Wittenstrom & Meyer, Respondent-Appellee).

First District (4th Division)   No. 87—3156

Opinion filed July 28, 1988.

Frederic F. Brace, Jr., of Chicago, *pro se* (Ellen A. Rubel, of counsel), for appellant.

Schwartz & Freeman, of Chicago (Mark Hellner and Cecilia M. Clarke, of counsel), for appellees Robert L. Andreasen *et al.*

JUSTICE LINN delivered the opinion of the court:

In 1986, plaintiffs-counterdefendants, minority shareholders of Suburban Bank of Bartlett, filed a stock appraisal action against the bank. They were represented by two law firms, Law Offices of Frederic F. Brace, Jr. (Brace), and Gromer, Wittenstrom & Meyer (GW&M). Brace was to try the case and GW&M was to act as liaison, channelling information between the minority shareholders and Brace.

The bank filed a counterclaim against six of the shareholders who were also former officers or directors of the bank. Neither law firm representing the shareholders filed an answer to the counterclaim and a default judgment was entered against the counterdefendant shareholders. Upon application of the shareholders (through new counsel), the trial court vacated the default on the counterclaim, providing, however, that they and/or their attorneys pay attorney fees to the bank in the amount of $16,571.50 in addition to $1,202.86 in costs.

In a later order the court allocated the total fee award between Brace and GW&M. GW&M filed a special and limited appearance.

Brace, however, participated in the trial court proceedings. He now appeals, contending that the court lacked jurisdiction to assess fees against him because Brace was not a party to the action and had withdrawn as counsel at the time the fees were allocated. In addition, Brace claims that since the counterdefendants' designated agent was GW&M, which was the firm responsible for filing the answer to the counterclaim, the counterdefendants should be bound by the acts of that firm. Hence, Brace should not be held liable for the inaction of GW&M.[1]

We affirm in part, vacate in part, and remand.

BACKGROUND

In January of 1986 Brace agreed to represent the minority shareholders of the Suburban Bank of Bartlett, some of whom were former bank directors, in an action for the appraisal of their shares. He would handle the trial and GW&M would communicate with the clients, acting as liaison. The three name partners of GW&M, Earl Gromer, Clarence Wittenstrom, and Greg Meyer, all were shareholders of the bank. Gromer was also a former director of the bank.

On August 30, 1986, the bank filed a counterclaim against the six plaintiff shareholders who were former officers of the bank: Robert L. Andreasen, A.B. Bussmann, Earl Gromer, Andrew Ratkins, Andrew Gorski, and James Herbison. These individuals contacted Meyer about the litigation because they considered him to be the liaison between them and Brace.

When the counterclaim was filed, both Brace and GW&M received notice. Neither firm, however, answered the counterclaim even though they continued to represent the shareholders in the appraisal suit. According to an associate of Brace, he called Meyer about the matter and Meyer said that "separate counsel was necessary and that it would be Mark Hellner." Meyer also told Brace that he would contact the counterdefendants and Hellner about the counterclaim.

The counterdefendants denied ever receiving notice of the counterclaim, although GW&M claimed to have notified Earl Gromer.

On December 5, 1986, at a status hearing on the bank's motion to dismiss count I of the appraisal suit, counsel for the parties agreed to extend counterdefendants' time to answer the counterclaim. Brace's associate wrote to Meyer notifying him of the new date.

---

[1]By stipulation of Brace and the bank, the bank has been dismissed as a party to this appeal. The appellees in this appeal are the counterdefendants, who successfully shifted the liability for the fee award to Brace and GW&M after they obtained the vacation of the default judgment. GW&M's notice of appeal was untimely filed; accordingly, we dismissed its appeal for want of jurisdiction.

In early March 1987, Brace and GW&M received notice that the bank was moving for a default judgment on the counterclaim because no answer had been filed. Neither firm filed a response to the motion or requested leave to file an answer. According to Brace, he contacted Meyer, who told him that Mark Hellner would be representing the counterdefendants. Another associate of Brace reaffirmed with Meyer that Hellner or Meyer would file an answer by the date set for hearing on the default, March 13.

Meyer denied stating that he would answer the counterclaim but said that he would be responsible for handling the motion. Meyer testified that he told Gromer, in September or October 1986, about the counterclaim and the need to obtain separate counsel because of a potential conflict of interest between the shareholder-plaintiff group and the plaintiffs-counterdefendants. Meyer prepared a response to the motion to default, which he filed with the court during the hearing on March 13.

On March 13, 1987, the trial court considered oral argument, including Greg Meyer's reasons why the answer had not been filed, but entered an order finding counterdefendants to be in default. A prove up was set for April. Immediately thereafter, GW&M contacted Mark Hellner of Schwartz & Freeman to request that he file an appearance and move to vacate the default. Hellner was granted leave to appear on March 17, 1987. Brace filed a motion for leave to withdraw as counsel.

Counterdefendants' motion to vacate the default judgment included an affidavit of Brace, which stated his understanding that Meyer would be responsible for the communications between counsel and the shareholders and that Brace was not to represent the counterdefendants.

On May 12, 1987, the trial court entered an order vacating the March 13 default order, conditioned "upon the payment by counterdefendants and/or their attorneys of an award of attorneys fees and costs." At the time, Brace and GW&M were still of record as counsel for plaintiff shareholders.

On June 17, 1987, the two firms withdrew as counsel for the plaintiff shareholders upon the substitution of another attorney. Mark Hellner continued to represent the counterdefendants. On the same date, the trial court considered the bank's fee petition, along with counterdefendants' response that the bank's request for $20,909.36 in fees and costs was unreasonable and should be reduced to $1,350. The court entered an order granting the bank $16,571.50 in fees and $1,202.86 in costs, for a total of $17,773.70, and vacated the default

order conditioned upon counterdefendants' payment to the bank of that amount.

Hellner then moved on behalf of counterdefendants for relief from payment of the fee sanction on the grounds that the court lacked authority to award the bank attorney fees under section 2—1301(e) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1301(e)). This motion was denied. Hellner also filed a motion to "allocate sanctions" between Brace and GW&M, so that the responsibility for the fees would be shifted to the former attorneys rather than counterdefendants. The court ordered Brace and GW&M to file responsive briefs to this motion and set the matter for August 3, 1987.

On August 3, the court ruled that it had authority to allocate the fee sanction between counterdefendants' two former law firms. In the meantime, counterdefendants had paid the fee judgment and the default order had been vacated.

Subsequently, on September 15, 1987, the court determined that Brace's law firm was responsible for 35% of the total fee sanction of $17,773.70 and that GW&M was to pay the remainder. The order was made final and appealable pursuant to Supreme Court Rule 305(a).

Brace appeals from certain orders entered in connection with the allocation of the fee sanction.

OPINION

I

THE TRIAL COURT'S AUTHORITY TO ASSESS ATTORNEY FEES
PURSUANT TO SECTION 2—1301(e)

Brace contends that the trial court lacked authority to assess fees against him, a nonparty, as a condition of vacating the default judgment pursuant to section 2—1301(e) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1301(e)). Under that section, the trial court may "set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable."

According to Brace, the court only had jurisdiction to assess fees, conditioning counterdefendants' ability to proceed upon payment of the fees, and insure that the fees were paid. Instead, the court allocated the fee as a sanction after counterdefendants had paid them, after the default had been vacated, and after the attorneys against whom the fee was allocated had withdrawn as counsel. Thus, the court lacked the power to "adjudicate disputes between a client and

his previous attorney that arise as a consequence of the court's order vacating the default."

Brace further argues that the summary procedure of allocating fees was improper and that if counterdefendants had a claim against their former attorneys they should have filed a malpractice action for damages.

■■ Initially, we note that trial courts are empowered under section 2—1301(e) to impose attorney fee sanctions as a condition of vacating default judgments. (See *Braglia v. Cephus* (1986), 146 Ill. App. 3d 241, 247, 496 N.E.2d 1171, 1174 (cause remanded for trial court to determine whether attorney fees should be paid by defendant or his counsel as condition of vacating default judgment); *Bachewicz v. American National Bank & Trust Co.* (1985), 135 Ill. App. 3d 294, 482 N.E.2d 95; Ill. Ann. Stat., ch. 110, par. 2—1301(e), Historical and Practice Notes, at 402 (Smith-Hurd 1983).) As a general proposition, therefore, the trial court has jurisdiction over the attorneys to assess attorney fees as a condition of vacating a default judgment. By extension, we find no reason why a court may not apportion or allocate a total fee award among the parties or their attorneys in accordance with their relative fault.

Brace nonetheless argues that he was not properly subjected to the court's jurisdiction in the September 15, 1987, order that allocated fees pursuant to the earlier order of August 3 (in which the court determined that it had the power to impose the sanction against the law firms in place of the counterdefendants). He had been granted leave to withdraw in June and was neither a party nor counsel of record when the court ruled on its liability for 35% of the fee award.

Brace's argument fails for two reasons. First, the record reveals that the orders of August and September implemented or expanded upon the order of May 12, 1987, which required counterdefendants *and/or* their attorneys to pay the bank's then undetermined fees as a condition of the vacatur. Since his firm was still of record on that date, Brace was charged with notice of the order as well as responsibility for the legal consequences of the order. Brace does not in fact contend that the court lacked jurisdiction to assess fees against him at that point; rather, he appears to rely on his withdrawal from the case before the entry of the actual order allocating the fees as taking him outside of the court's reach.

■ We cannot agree that the court lost the power to determine the fee question adversely to Brace once he formally withdrew from representing plaintiffs-counterdefendants. The default had already occurred at that point and Brace was undoubtedly one of the responsi-

ble persons, as counsel of record. The May order was only the first in the series that were entered on the fee issue.

More basic, perhaps, is the second reason why Brace's jurisdictional argument fails. Personal jurisdiction can be waived, and is waived, by a person's participation in the proceedings in issue. (*E.g.*, *Lord v. Hubert* (1957), 12 Ill. 2d 83, 145 N.E.2d 77; *Farley v. Blackwood* (1978), 56 Ill. App. 3d 1040, 372 N.E.2d 921.) Brace accepted the court's invitation to file a response or objection to the assessment of fees against him. He thereby had the opportunity to be heard on the issue. He did not file a special and limited appearance to contest the court's jurisdiction. Therefore, we find that Brace waived the issue of whether the trial court had jurisdiction over him when it entered the orders concerning the allocation of the fees.

The other aspect of Brace's position that the trial court exceeded its authority concerns the summary nature of the procedure used to impose fees, as an incident to vacating the default judgment under section 2—1301(e). For support he relies on *Liberty v. Greek Welfare Foundation* (1976), 44 Ill. App. 3d 973, 358 N.E.2d 1241.

In *Liberty*, the trial court ordered an attorney to return money he had received as payment for legal services because the source of the money was a garnishment proceeding that was instituted to collect on a default judgment, which was later vacated. The attorney had obtained approximately $8,000 from the garnishment action on behalf of his client, the judgment creditor. The attorney retained $2,697 as his fee and forwarded the balance to his client. When the default judgment was vacated, the defendant requested that the trial court order the plaintiff's attorney to return the money he had received. The trial court accordingly entered the order.

On appeal, the court reversed, noting that the attorney was not a party to any action pending before the trial court and that the attorney owed no duty to the defendant, since there was no attorney-client relationship between them. Hence, the defendant lacked standing to compel the attorney to return the money. Moreover, the garnishment proceeds belonged to the plaintiff at the time they were obtained and the attorney was entitled to be paid for his services, even though the source of the funds was the garnishment proceeds and the default judgment that had given rise to the garnishment action was ultimately vacated.

*Liberty* does not aid Brace. Brace was not summarily ordered to relinquish monies paid to him as fees for his services in circumstances establishing that there was no legal basis for such an order. In contrast, the court in the pending case was acting in accordance with its

express authority to condition the vacation of the default judgment upon reasonable terms and conditions.

We conclude that the court had jurisdiction to allocate fees between Brace and GW&M.

THE SCOPE OF THE COURT'S AUTHORITY:

REASONABLENESS REQUIREMENT

Having affirmed the trial court's general jurisdiction, however, we question whether the total award of almost $18,000 was a *reasonable* condition of vacating the default order. We do not believe that the scope of the court's power to assess fees under section 2—1301(e) is unlimited, or even particularly broad.

Brace did not raise this issue in his brief.[2] Ordinarily, we do not address issues that have been waived. Nevertheless, Brace's appeal does challenge the court's *power* to enter the orders appealed from. Proper exercise of that power requires an understanding of what objectives are served by section 2—1301 and thus what conditions placed on vacating defaults are "reasonable."

■ While the courts do not condone negligence in answering pleadings in a timely manner, default judgments are routinely vacated, particularly within term time, for the compelling reason that "substantial justice" between the parties generally requires a hearing on the merits. See, *e.g.*, *Meeker v. Gray* (1986), 142 Ill. App. 3d 717, 728, 492 N.E.2d 508; *City of Chicago v. Central National Bank* (1985), 134 Ill. App. 3d 22, 25, 479 N.E.2d 1040.

The moving party is no longer required to show diligence or good cause in failing to timely answer, and he need not necessarily establish that he has a meritorious defense on the face of the motion, as he would be required to do in a petition to vacate a final judgment under section 2—1401 of the Code of Civil Procedure. (*Braglia v. Cephus* (1986), 146 Ill. App. 3d 241, 244, 496 N.E.2d 1171, 1173.) In *Adams v. Grace* (1970), 128 Ill. App. 2d 69, 262 N.E.2d 489, in reversing the trial court, the appellate court ruled that a motion to vacate should be granted to the counterdefendants despite the fact that their attorney gave no valid excuse and did not appear at the hearing on the motion for default even though he had notice of the motion. If the record shows no facts to indicate how setting aside a default judg-

---

[2]The record reveals that the new attorney representing the counterdefendants, Mark Hellner, did strongly object to the amount of requested fees as being unreasonable. It is not clear whether Brace was involved in the proceedings at that point; it was not until after Hellner's motion to shift any liability for the fee award to Brace and GW&M that the court requested briefs from Brace and GW&M.

ment would prejudice a plaintiff, the trial court's finding that a defendant's failure to appear is not justified does not require the denial of the motion to vacate. *Satcher v. Inland Real Estate Corp.* (1983), 116 Ill. App. 3d 685, 453 N.E.2d 126 (reversing the trial court's order denying motion to vacate).

▮ Because of the courts' great liberality in vacating defaults, the imposition of attorney fees as a condition of vacatur should be limited to the actual and reasonable costs of preparing the motion for default and presenting it in court. If there has been a prove up of damages on the default (there was not in this case), the party seeking to vacate would also be liable for those fees and costs. (See *Bachewicz v. American National Bank & Trust Co.* (1985), 135 Ill. App. 3d 294, 482 N.E.2d 95 (plaintiff was awarded $1,872.75 in attorney fees for the prove up, before a jury, of his default judgment, after it was vacated).) Thus, the nonmoving party would incur no additional expense resulting from the defaulting party's successful vacation of the judgment.

▮ In the pending case, the trial court correctly granted the motion to vacate. The bank did not need to prove up its claim because the counterdefendants had filed a motion to vacate the default order, thereby suspending the proveup hearing. There was no evidence that the bank would be significantly prejudiced as a result of the vacation of the default. Therefore, there is scant logic to its statement that it had to force counterdefendants "to do their duty" and to "test their proffered excuses against the section 2—1301(e) standards." The bank's attempt to vigorously "maintain" the default judgment was hardly an effective way to speed the resolution of the claims on the merits. Moreover, the original complaint against the bank was still pending and the counterclaim had been pending only six months at the time of the default hearing; a trial on the entire controversy would not likely be set for months or years. See *Engelke v. Moutell* (1974), 20 Ill. App. 3d 253, 313 N.E.2d 613 (plaintiffs were not in a position to argue delay when they failed to inform the court of defendant's failure to answer for several years and did not show how they had been prejudiced).

We do not believe that the amount of fees awarded the bank was commensurate with reasonable compensation under section 2—1301(e). Such award should not have included time spent on discovery, research, preparation of witnesses' examination, or any other items that were not directly and reasonably related to the motion for default judgment itself. In this case it appears that the bank undertook an elaborate and wasteful course of discovery ostensibly designed to

discover the reasons why the answer to the counterclaim was not timely filed. As the case law demonstrates, however, the reasons why a party defaults, at least when the failure to appear or answer is inadvertent or negligent, are not of particular significance.

We emphasize that we are in no way condoning the conduct of the attorneys who failed to expeditiously answer the counterclaim. Brace, however, appears to have had a plausible belief that the matter was being handled by cocounsel or new counsel. To allow the counterplaintiff to embark on an unchecked spiral of discovery and other "strategy" to probe into the reasons why the answer was not filed is neither good policy nor efficient use of the litigation process. The potential for abuse is clear: if a plaintiff believes that the defendant may be required to pay all fees and expenses, regardless of their connection with the vacation of the default order, there is little to stop the plaintiff from running up unnecessary expenses in an effort to punish the defaulting defendant—or to take discovery of its underlying claims under the guise of discovering why an answer was not filed timely.

The bank's attorneys, Freeborn & Peters, took eight depositions of two or three hours each and spent many hours preparing for possible cross-examination of expected witnesses for a hearing on the motion to vacate the default, which was almost certain to be granted.[3] The fee affidavit in the record includes many questionable hours spent in office strategy conferences, research, review, and preparation of matters purportedly related to the motion to vacate. Such excessive preparation for a "routine" motion to vacate is presumptively inappropriate. Only 6.7 of the 195 hours claimed by the bank's attorneys relate to the time spent in preparing the initial motion for default and obtaining the entry of the order.

In other contexts, the courts have limited fees and costs to conform to the objectives of the statutes or rules allowing such awards. Supreme Court Rule 219(a) allows reasonable fees to be taxed to the moving party if the opponent's refusal to answer discovery is "without substantial justification" (107 Ill. 2d R. 219(a)), as long as the imposition of the fees is restitution and not a penalty (*Lynch v. Mullenix* (1977), 48 Ill. App. 3d 963, 966, 363 N.E.2d 645).

In *Hardware Wholesalers, Inc. v. Clemenic* (1984), 124 Ill. App.

---

[3]Mark Hellner, counterdefendants' attorney, filed an affidavit which enumerates the times that he attempted to persuade the bank's attorneys that their opposition to the motion would likely fail in light of the case law and that discovery on the matter would be useless. The bank's decision to pursue its wasteful strategy, in our opinion, should not have been rewarded by such excessive fees.

3d 304, 464 N.E.2d 700, the appellate court reversed the imposition of a default judgment in the amount of $20,000, which default was entered as a sanction for defendant's discovery violations. The court stated that attorney fees could have been imposed instead, as a condition of vacating the default. The court commented, "The behavior of defendants and their attorneys to plaintiff and its attorneys is certainly not to be approved or encouraged. But especially when we consider that a *proper* award of attorney fees, under these circumstances, *would not approach $20,000* and would have reasonably compensated plaintiff for inconvenience and delay, we judge that relief should be granted." (Emphasis added.) 124 Ill. App. 3d at 309, 464 N.E.2d at 703.

We conclude that the trial court exceeded its authority in the present case because the amount of the award is not reasonably related to the securing of the default judgment and its later vacation. The attorneys' discovery plan accomplished no discernible benefit to their client, and the opposition to the motion itself entailed no novel or complex matters. Accordingly, pursuant to our power under Supreme Court Rule 366, we vacate the fee award and remand for a redetermination of the amount of attorney fees and costs in light of our holding. 107 Ill. 2d R. 366.

## II

As a second basis for avoiding liability to counterdefendants on the attorney fee issue, Brace argues that GW&M was the designated agent of counterdefendants and, since Meyer admitted that Brace was not responsible for the counterclaim, counterdefendants should be bound by the words and acts of their (sole) agent, GW&M.

■ While Brace correctly cites general principles of agency law, his argument is flawed to the extent it seeks to excuse him, one of the counsel of record, for legal responsibility to the clients on the basis that his cocounsel was the attorney who was in fact expected to arrange for the handling of the counterclaim.[4] Under the law, Brace was as much an agent of the clients as was GW&M. (See *Pierce v. MacNeal Memorial Hospital Association* (1977), 46 Ill. App. 3d 42, 360 N.E.2d 551.) Regardless of his understanding with cocounsel, Brace retained responsibility to the clients and cannot excuse his failure to secure a timely answer to the counterclaim on the basis that he was not the attorney who was to respond to it. Reliance on another

---

[4]Brace did not assert that he had no attorney-client relationship with counterdefendants.

attorney does not absolve the original attorney of responsibility for harm caused by his inaction. *Practical Offset, Inc. v. Davis* (1980), 83 Ill. App. 3d 566, 404 N.E.2d 516 (attorney found negligent for relying upon a second attorney to file financing statements for his client when those statements were never filed).

While Brace could not completely absolve himself of legal responsibility to the counterdefendants on the grounds that cocounsel was to handle the counterclaim, the trial court apparently did take his "defense" into account. The court apportioned the fault of the attorneys, finding Brace only 35% liable for the total award. While this allocation appears reasonable under the circumstances, we do not wish to foreclose the right of Brace or any other interested party from arguing that the relative percentages of fault should be altered in accordance to whatever evidence is adduced.

Accordingly, we affirm the trial court's ruling that imposed partial liability for the total fee judgment upon Brace but we vacate the award of $17,773.70 and remand for redetermination as to what amount of fees is reasonable.

Affirmed in part; vacated in part and remanded.

JOHNSON and McMORROW, JJ., concur.