2023 IL App (1st) 191973
No. 1-19-1973
Opinion filed October 27, 2023

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| SUBURBAN REAL ESTATE SERVICES, INC. and BRYAN BARUS, | ) ) ) | |
| Plaintiffs | ) ) | Appeal from the Circuit Court of Cook County. |
| v. | ) ) | |
| WILLIAM ROGER CARLSON JR. and CARLSON PARTNERS, LTD., | ) ) ) | |
| Defendants and Third-Party Plaintiffs-Appellants | ) ) | |
| | ) | No. 16 L 5295 |
| (Carmen A. Gaspero Jr.; Lisa M. Gaspero; and Lisa M. Gaspero, Attorney At Law, P.C., d/b/a Gaspero & Gaspero, Attorneys at Law, P.C., | ) ) ) ) | |
| | ) ) | Honorable Diane M. Shelley, |
| Third-Party Defendants-Appellees). | ) ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Presiding Justice Johnson and Justice Walker concurred in the judgment, and opinion.

**OPINION**

¶ 1    Suburban Real Estate Services, Inc. (Suburban), and Bryan Barus needed legal advice in dissolving ROC/Suburban, LLC, a company they co-owned with ROC, Inc. Suburban and Barus retained defendants William Roger Carlson and his law firm, Carlson Partners, Ltd. After Barus

followed Carlson's advice, ROC, Inc., sued Suburban, alleging Barus breached his fiduciary duties to ROC/Suburban. Barus then retained the law firm of Gaspero & Gaspero (Gaspero), and both firms represented Suburban until Carlson withdrew several months later.

¶ 2    After a bench trial resulted in a judgment against Suburban for $336,652.26, Barus brought a legal malpractice complaint against Carlson, alleging Carlson's negligent advice led to the judgment. Carlson filed a third-party complaint for contribution against Gaspero under the Illinois Joint Tortfeasors Contribution Act (Contribution Act) (740 ILCS 100/0.01 (West 2016)).

¶ 3    Carlson moved for summary judgment, arguing the two-year statute of limitations barred the malpractice claim. Gaspero also moved for summary judgment on Carlson's contribution claim. The trial court granted summary judgment to Carlson. The trial court also granted Gaspero summary judgment on its third-party complaint for contribution.

¶ 4    Barus appealed the summary judgment order in Carlson's favor on his legal malpractice claim, and Carlson appealed the summary judgment order on its third-party complaint for contribution. This court stayed Carlson's appeal until resolution of Barus's appeal, which we reversed in Carlson's favor and remanded. *Suburban Real Estate Services, Inc. v. Carlson*, 2020 IL App (1st) 191953. The Illinois Supreme Court affirmed. *Suburban Real Estate Services, Inc. v. Carlson*, 2022 IL 126935.

¶ 5    We now address whether the trial court erred in granting summary judgment to Gaspero on the contribution claim. Carlson contends the trial court (i) applied the wrong standard under section 2 of the Contribution Act and (ii) erred in finding no questions of fact on whether Gaspero caused or contributed to Barus's injury.

¶ 6    We affirm. Barus's monetary injuries for breaching his fiduciary duties to ROC/Suburban resulted from following Carlson's legal advice, and no genuine issues of material fact exist as to

whether Gaspero's representation of Barus in the underlying litigation caused or contributed to those injuries.

¶ 7                                    Background

¶ 8      Bryan Barus is the principal and sole owner of Suburban, a commercial real estate management company. In February 2006, Suburban and another company, ROC, Inc., formed ROC/Suburban LLC. (Michael Siurek, the sole shareholder of ROC, Inc., is not a party to the appeal.) The new company acted as a vendor to Suburban, supplying commercial property management services. In 2010, Barus decided to end Suburban's involvement in ROC/Suburban and retained Carlson and his law firm to represent his company in unwinding the business relationship. On June 1, 2010, on the advice of Carlson, Barus sent a "break-up" letter to Siurek, notifying him of the steps he planned to take to terminate his company's relationship with ROC/Suburban, including no longer using ROC/Suburban as a vendor and taking most of ROC/Suburban's employees.

¶ 9      On the advice of Carlson, Barus implemented the steps outlined in the letter. About a month later, in August 2010, ROC, Inc., sued Suburban in Du Page County, alleging that Suburban's actions, through Barus, breached fiduciary duties owed to ROC/Suburban (underlying litigation). Barus also retained Gaspero to represent him in the underlying litigation because, according to Gaspero, Barus was troubled by the legal advice Carlson gave him. E-mail messages from Barus indicate he wanted the firms to work simultaneously and "in concert" and function as "a team" in the underlying litigation. The firms' joint representation lasted until December 2010, when Carlson terminated his relationship with Barus.

¶ 10     At a pretrial conference in April 2013, the trial judge told Gaspero that if the case proceeded to trial, it would likely find that Barus's conduct in disassociating from ROC, Inc., constituted a

breach of fiduciary duty. The judge further said that, to the extent Barus's conduct was recommended by Carlson, the advice constituted legal malpractice and a malpractice claim was "a hundred percent" certainty. Gaspero told Barus about the trial judge's comments and discussed the possibility of a legal malpractice claim against Carlson.

¶ 11    The underlying litigation continued for nearly five years. On the recommendation of Gaspero, Suburban filed a counterclaim, alleging that Siurek breached his fiduciary duties to ROC/Suburban. After a bench trial, the court entered judgment for ROC, Inc., and against Suburban on its counterclaim. The court found that Suburban, through Barus, breached its fiduciary duties and ordered Suburban to pay ROC, Inc., 50% of the fair value of the assets Barus improperly transferred from ROC/Suburban. In a written opinion, the trial court stated that Barus "had no creditability and his testimony was designed to hide facts from the court and cannot be believed." The court awarded damages of $336,652.26 against Suburban.

¶ 12                                    Malpractice Litigation

¶ 13    Barus, through new attorneys, filed a legal malpractice case in 2016, alleging that, as a result of Carlson's legal advice, he had to pay more than $500,000 in claims and attorney's fees to ROC, Inc. Barus alleged that Carlson improperly advised him on dissolving ROC/Suburban by (i) failing to advise on the appropriate steps to obtain a judicial dissolution, (ii) recommending Barus take self-help action, which resulted in a finding he breached his fiduciary duties to ROC/Suburban, (iii) recommending and approving the content of the breakup letter and the actions Barus took, or failing to advise him of the consequences of those actions, and (iv) failing to advise Barus of an alternate course of action after ROC, Inc., and its lawyers threatened to take legal action for breach of fiduciary duties.

¶ 14    In April 2017, Carlson filed a third-party complaint for contribution against Gaspero under the Contribution Act. Carlson alleged Gaspero breached its fiduciary duties to Barus and caused or contributed to Barus's injury by (i) failing to prepare Barus for his deposition testimony properly, (ii) failing to apprise themselves of the facts to represent Barus in the underlying case competently, (iii) filing a counterclaim against ROC, Inc., and (iv) failing to settle ROC, Inc.'s, lawsuit against Barus after the trial judge informed Gaspero of the likelihood of an adverse ruling.

¶ 15    Carlson moved for summary judgment on the malpractice claim, arguing Barus knew or should have known about his alleged negligence in 2011 when Barus retained and started paying attorney's fees to Gaspero or by 2013, at the latest, when the trial judge told Gaspero that a malpractice claim was a certainty. Carlson argued that the applicable two-year statute of limitations barred Barus's malpractice complaint.

¶ 16    Meanwhile, Gaspero moved for summary judgment on Carlson's third-party complaint for contribution, arguing the record directly rebutted the conclusion that Carlson and Gaspero were both subject to liability in tort to Barus arising from the same injury, as required by section 2 of the Contribution Act. Gaspero asserted Carlson alone advised Barus on terminating his relationship with ROC/Suburban. Gaspero also argued Carlson could not proceed to trial on the claim without pointing to evidence showing what Gaspero could have done to change the outcome.

¶ 17    After a hearing, the trial court granted both motions for summary judgment. As to Carlson's contribution claim, the trial court found Carlson does not "point to any material in the record that reveals the Gaspero firm could or should have advised Barus against taking the actions that he took that gave rise to the [underlying] case." Further, "[a]s to failing to advise Barus to remediate his conduct against ROC/Suburban, there is nothing in the record to show that this did not occur or that this would have prevented the existing damages. Indeed, by the time the Gaspero firm knew

of Barus's conduct, the damage had been done to ROC/Suburban." The court found no evidence the Gaspero attorneys failed to apprise themselves of the facts of the case, stating that the only support was an unverified response to a motion for Illinois Supreme Court Rule 137 (eff. July 1, 2013) sanctions filed by the attorney representing Barus in the malpractice litigation. That motion stated, "in a conclusory manner that the 'record demonstrates that at least some of the issues identified by [the trial judge] with [Barus and his wife's] testimony may have resulted from issues [Gaspero] failed to completely understand, thus leading to the appearance that the Ba[r]us's were being deliberately obtuse.' " But the court found "no indication in the record that this motion is supported by any evidentiary foundation such as an affidavit, deposition testimony, or other foundational evidence."

¶ 18    As to Carlson's contention that Gaspero should have settled the case, the court stated that while an attorney could be liable in malpractice for failing to settle a case against a client's express instruction, "no evidence in the record show[ed] that Gaspero had such authority, or that Gaspero had not urged Barus to settle." Thus, the court determined no genuine issue of material fact existed on the question of proximate cause and granted summary judgment for Gaspero.

¶ 19    Barus appealed the trial court's order granting Carlson summary judgment on the malpractice claim, and Carlson appealed the summary judgment order on the claim for contribution. This court consolidated the appeals and stayed Carlson's appeal of his contribution claim pending Barus's appeal. We then reversed the trial court, finding the statute of limitations on Barus's malpractice claim did not accrue until the trial court entered judgment against Suburban for breaching its fiduciary duties. We remanded Barus's timely filed complaint for further proceedings. *Carlson*, 2020 IL App (1st) 191953. The Illinois Supreme Court affirmed. *Carlson*,

2022 IL 126935. Now we turn to Carlson's appeal of the trial court's order granting summary judgment to Gaspero on Carlson's claim for contribution.

¶ 20                              Analysis

¶ 21                         Standard of Review

¶ 22    Summary judgment applies where no genuine issues of material fact remains, and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). The trial court considers "the pleadings, depositions, admissions, exhibits, and affidavits on file in the case" and construes that evidence in favor of the nonmoving party. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). But the inferences drawn in favor of the nonmovant must be supported by evidence; speculation and conjecture are insufficient. *Benson v. Stafford*, 407 Ill. App. 3d 902, 912 (2010). We review the trial court's grant of summary judgment *de novo*. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 23                    Section 2 of the Contribution Act

¶ 24    The Contribution Act permits a defendant to assert a third-party claim for contribution "where 2 or more persons are subject to liability in tort arising out of the same injury *** there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 ILCS 100/2(a) (West 2016). To properly allege a right of contribution, a defendant must demonstrate that (i) the defendant and the third party are both subject to liability in tort to the plaintiff and (ii) their liability must arise from the same injury. *People v. Brockman*, 148 Ill. 2d 260, 268 (1992).

¶ 25    In assessing liability under section 2, we look at when the injury occurred and not when the contribution claim was brought. *Doyle v. Rhodes*, 101 Ill. 2d 1, 11 (1984). Here, that would be when the judgment was entered against Barus. See *Carlson*, 2022 IL 126935, ¶¶ 37-39.

¶ 26    Carlson asserts Gaspero's concurrent representation of Suburban in the underlying litigation alone is sufficient to make Gaspero "subject to liability in tort" under the Contribution Act. For support, Carlson relies on *Andreasen v. Suburban Bank of Bartlett*, 173 Ill. App. 3d 333, 343-44 (1988). In *Andreasen*, minority shareholders of a bank filed a stock appraisal action against the bank and retained two law firms, one to try the case and the other to act as a liaison with the minority shareholders. *Id.* at 334. The bank filed a counterclaim, and when neither law firm representing the shareholders filed an answer, the trial court entered a default judgment. *Id.* The trial court granted the shareholders' motion to vacate the default judgment but ordered that they or their attorneys pay the bank. *Id.* One of the firms representing the shareholders appealed the order, arguing that the other firm was the shareholder's sole agent on the counterclaim issue and solely responsible for the failure to file an answer. *Id.* at 343. The appellate court disagreed, holding "[r]egardless of his understanding with cocounsel, [the appellant attorney] retained responsibility to the clients and cannot excuse his failure to secure a timely answer to the counterclaim on the basis that he was not the attorney who was to respond to it." *Id.*

¶ 27    Carlson contends that, as in *Andreasen*, Gaspero's concurrent representation of Barus creates a question of fact on liability for Barus's injuries. *Andreasen* is distinguishable, however. In *Andreasen*, both firms represented the minority shareholders when the bank filed its counterclaim, so both had a responsibility to their clients for failing to answer. Conversely, only Carlson represented Suburban when the conduct giving rise to the underlying litigation occurred, namely, Carlson's advice to Barus about dissolving ROC/Suburban, which Barus eventually took. Gaspero's later representation alone is not, without more, sufficient to make Gaspero "subject to liability in tort," a requirement under the Contribution Act.

¶ 28                                    Proximate Cause

¶ 29    Carlson also contends the trial court erred in granting summary judgment because questions of fact remain on whether Gaspero caused or contributed to Barus's injuries. We agree with Carlson that Gaspero could be liable for contribution under the Contribution Act even if Gaspero's conduct was not concurrent with Carlson's conduct, so long as the same injury is involved. See *Brockman*, 148 Ill. 2d at 269 (holding, "the proper focus of the 'same injury' requirement is not the timing of the parties' conduct which created the injury, but the injury itself"); *Alper v. Altheimer & Gray*, 257 F.3d 680, 685 (7th Cir. 2000) (applying Illinois law, "if a trier of fact could find that [two law firms'] conduct combined to produce the same injury, [the law firm sued for malpractice] has properly pleaded a third party action for contribution, even though the conduct of the two parties occurred at different times").

¶ 30    But in determining whether Gaspero can be "subject to liability in tort," we must decide if they engaged in conduct while representing Barus that caused or contributed to the injuries. In short, we must assess whether Carlson has alleged facts showing Gaspero is liable for legal malpractice in representing Barus.

¶ 31    To prevail on a legal malpractice claim, a plaintiff client must plead and prove (i) the defendant attorney owed the plaintiff a duty of due care arising from the attorney-client relationship, (ii) the defendant breached that duty by committing a negligent act or omission, (iii) which proximately caused the plaintiff's injury, and (iv) the plaintiff suffered actual damages. *Laurent v. Johnson*, 2017 IL App (3d) 160627, ¶ 18. The failure to establish an element of the cause of action will result in summary judgment. *Williams*, 228 Ill. 2d at 417.

¶ 32    Carlson contends the record reflects that Gaspero's negligent representation caused or contributed to Barus's alleged injuries. Specifically, Gaspero failed to properly prepare Barus for

his trial testimony or to properly apprise themselves of the relevant facts necessary to examine trial witnesses competently. For support, Carlson relies on a response to a motion for Rule 137 sanctions filed by Barus's malpractice attorneys, that "at least some of the issues identified by [the trial judge] with the Barus'[s] testimony may have resulted from issues [Gaspero] failed to completely understand, thus leading to the appearance that the Barns's [*sic*] were being deliberately obtuse." Carlson contends the trial court erred in declining to consider this document on the grounds it was "an unverified motion for Rule 137 sanctions," because "[a]n admission in an unverified pleading signed by an attorney is binding on the party as a judicial admission." *Bank of New York Mellon v. Wojcik*, 2019 IL App (1st) 180845, ¶ 23. Alternatively, the statements constitute "evidentiary admissions" precluding summary judgment. See *Renshaw v. Black*, 299 Ill. App. 3d 412, 418-19 (1998) (reversing summary judgment in legal malpractice case, attorney's statements were "evidentiary admissions" creating issue of fact on causation and damages).

¶ 33    Judicial admissions are formal admissions in the pleadings that have the effect of withdrawing a fact from issue and dispensing wholly with the need for its proof. *Konstant Products, Inc. v. Liberty Mutual Fire Insurance Co.*, 401 Ill. App. 3d 83, 86 (2010). A statement must be clear, unequivocal, and uniquely within the party's personal knowledge to constitute a judicial admission. *Williams Nationalease, Ltd. v. Motter*, 271 Ill. App. 3d 594, 597 (1995). The statement must also be intentional, relating "to concrete facts and not an inference or unclear summary." *Serrano v. Rotman*, 406 Ill. App. 3d 900, 907 (2011). Evidentiary admissions can be controverted or explained by the party, while judicial admissions cannot be controverted or explained. *Pryor v. American Central Transport, Inc.*, 260 Ill. App. 3d 76, 85 (1994).

¶ 34    As a matter of law, the statements in the response to a motion for sanctions were neither judicial nor evidentiary admissions. Made by Barus's malpractice attorney, the statements are

being offered by Carlson, not against Barus but against Gaspero, who is not the party who made them. Moreover, the statements are not unequivocal, asserting some of the issues the trial judge raised about Barus's testimony *may* have resulted from Gaspero's failure to understand the issues thoroughly. This equivocal statement, not made by Gaspero, cannot constitute an admission. Thus, the trial court did not err in declining to consider it.

¶ 35    The other evidence that Gaspero caused or contributed to Barus's injury involves (i) the trial court's assertion in its written opinion that Barus was "not truthful" and "not credible" when he testified at trial, (ii) failing to settle the underlying lawsuit after the trial judge told Gaspero that Barus had breached his fiduciary duties, and (iii) filing a counterclaim against Siurek without naming Siurek as a defendant in his individual capacity or presenting evidence of damages. Carlson asserts that this "evidence," at minimum, presents a question of fact on whether Gaspero caused or contributed to Barus's injuries. We disagree.

¶ 36    The trial judge's assessment that Barus was not a truthful or credible witness, without more, does not constitute evidence of legal malpractice. Carlson does not contend, and nothing in the record suggests, Gaspero encouraged Barus to lie or failed to advise him to testify truthfully.

¶ 37    As to failing to settle, Carlson presents no evidence Gaspero did not try to settle. At her deposition, Lisa Gaspero stated she was "always advising Barus *** it would be in his best interests to settle to avoid graver repercussions" and "[Barus] wanted to settle the case under terms that he would consider fair, and we had not yet been able to arrive at an agreement that [he] considered fair." An attorney has no authority to settle a client's claim, absent the client's express authorization. *Kulchawik v. Durabla Manufacturing Co.*, 371 Ill. App. 3d 964, 969 (2007). The record suggests Gaspero encouraged Barus to settle and attempted to settle, but the parties never reached terms to which Barus would agree. Again, not evidence of legal malpractice.

¶ 38     Lastly, Carlson contends Gaspero was negligent in advising Barus to file a counterclaim against Siurek, which contributed to extending the case for several years and resulted in an adverse judgment against Suburban. First, as noted, nothing in the record suggests that anything other than Carlson's advice to Barus resulted in the trial court's finding Barus breached his fiduciary duties to ROC/Suburban. As to whether Gaspero acted negligently by filing a counterclaim prolonging the litigation, " 'the question of whether a lawyer has exercised a reasonable degree of care and skill in representing and advising his [or her] client has always been one of fact.' " *Nelson v. Quarles & Brady, LLP*, 2013 IL App (1st) 123122, ¶ 30 (quoting Brown *v. Gitlin*, 19 Ill. App. 3d 1018, 1020 (1974)). Despite a lawyer's breach of a duty to a client presenting a factual question, "the issue may be decided as a matter of law under the doctrine of judgmental immunity which provides that 'an attorney will generally be immune from liability, as a matter of law, for acts or omissions during the conduct of litigation, which are the result of an honest exercise of professional judgment.' " *Id.* ¶ 31 (quoting *McIntire v. Lee*, 816 A.2d 993, 1000 (N.H. 2003)).

¶ 39     Carlson presented no evidence that the Gaspero firm failed to exercise professional judgment in representing Barus or caused or contributed to the monetary injuries Barus incurred when he breached his fiduciary duties by taking the actions Carlson recommended. Absent that evidence, the trial court correctly granted summary judgment to Gaspero on Carlson's claim for contribution.

¶ 40     Affirmed.

*Suburban Real Estate Services, Inc. v. Carlson*, **2023 IL App (1st) 191973**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-L-5295; the Hon. Diane M. Shelley, Judge, presiding. |
| **Attorneys for Appellant:** | John J. D'Attomo, of Nisen & Elliott, LLC, of Chicago, for appellants. |
| **Attorneys for Appellee:** | Rebecca M. Rothmann and Marc Pawlus, of Wilson Elser Moskowitz Edelman & Dicker LLP, of Chicago, for appellees. |