*In re* MARRIAGE OF DOLORES ROMASHKO, Petitioner-Appellee, and NICHOLAS ROMASHKO, Respondent-Appellant.

First District (6th Division)   No. 1—89—3531

Opinion filed April 19, 1991.

Mary Ellen Dienes, of Chicago, for appellant.

Springer, Casey, Dienstag & Devitt, P.C., Norman Becker and Selwyn Blum, all of Chicago (Gary Dienstag, of counsel), for appellee.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

The action below was one for the dissolution of a 23-year marriage between petitioner-appellee Dolores Romashko (Dolores) and respondent-appellant Nicholas Romashko (Nicholas). Nicholas and his attorney failed to appear at trial, and judgment for dissolution of marriage was entered against Nicholas after an *ex parte* hearing. Within 30 days of the entry of judgment, Nicholas filed a motion to vacate the entry of judgment. The trial court denied this motion except with respect to one issue involving whether Nicholas' credit union account was a marital property. A hearing on this matter was subsequently had. The trial judge then affirmed her earlier finding that the credit union account was in fact a marital property. Nicholas appeals the entry of judgment, requesting that this court reverse the en-

try of judgment, remand the matter for a new trial and classify the credit union account as nonmarital property. We reverse and remand the matter, while leaving the trial court's finding on the credit union account intact.

The pertinent facts to this appeal are as follows. Dolores filed her petition for dissolution of marriage against Nicholas in February of 1986. On October 14, 1987, Judge Gustafson entered an order setting the case for trial on January 7, 1988, before Judge McNulty. The order provided that emergency motions for continuance of trial, supported by affidavit, must be presented at least 48 hours prior to trial.

On the date of trial, Dolores and her counsel appeared, but neither Nicholas nor his counsel, James Reagan, appeared. Dolores' counsel informed the court that Reagan had called him and asked him to continue the case, which Dolores' counsel could not agree to. The reason Reagan needed the case continued was because Reagan had an emergency matter in another case before the appellate court in Elgin, Illinois. The trial judge, noting the failure to provide the two days' notice required by the order setting the matter for trial, ruled that she would not grant a continuance and proceeded to trial.

At the trial, Dolores testified that she and Nicholas were married in 1965 and have two children, Nicolette, who was a college student at the time of trial, and Todd, who was a high school senior at the time of trial. Dolores testified that Nicholas engaged in mental and physical cruelty during their marriage, without any cause on her part. Dolores and Nicholas own a residence in Morton Grove in joint tenancy, which is worth about $95,000 and has an outstanding mortgage of about $5,000. Dolores' mother had loaned the couple $5,000 to buy the property—$3,000 of which was still owed.

Dolores, who was employed during the marriage and contributed money toward maintaining the home, further testified regarding a PaceSetter Federal Credit Union account. Nicholas, according to Dolores, had $25,088.77 in this account and these funds had been acquired during the marriage. The funds were no longer in the account at the time of trial, however. Dolores testified that Nicholas had cashed a life insurance policy which was paid from funds acquired during the marriage. Nicholas received $3,100 from the policy. Dolores drove a 1979 Dodge St. Regis, while Nicholas drove a 1981 Chevrolet truck. Dolores waived maintenance, and during the course of the trial Dolores' attorney advised the court that Nicholas earned $7 an hour as a maintenance person for United Airlines.

The trial court then made the following oral ruling: that grounds existed to dissolve the marriage; that each party should receive 50%

of the proceeds from the sale of the house; that Dolores should receive, from Nicholas' share of the proceeds from the sale of the house, 50% of what had been in the credit union account, 50% of the $3,000 owed to Dolores' mother, and 50% of the $3,100 insurance policy proceeds; and that Dolores was entitled to the Dodge automobile and 50% of the furniture and furnishings from the house. No written order was entered.

On January 21, 1988, 14 days after the *ex parte* hearing, Nicholas filed a written motion to vacate. Nicholas' attorney, Reagan, also filed an affidavit which stated that he was unable to be at the trial because the day before the trial he became aware that he would need to present an emergency motion to consolidate appeals in another case he was handling before the Second District Appellate Court in Elgin. Reagan averred that he had tried to reach Dolores' attorney to inform him of the need for a continuance the day before the trial in the instant matter, but Dolores' attorney was not in the office. The morning of the trial Reagan did contact Dolores' attorney, and at this time was informed that though the trial judge would be informed of Reagan's predicament, Dolores' counsel could not agree to have the trial continued. While the motion was brought as an emergency matter, the trial judge indicated that the motion should be brought on the court's regular call, and Nicholas did not receive a hearing on the motion until June 13, 1988. At this time, Reagan argued that the *ex parte* rulings should be vacated because Nicholas had a meritorious defense and Dolores had concealed some of her assets from the court. The trial judge indicated that the only issue before her was whether there was a good reason for Nicholas' failure to attend the trial, and eventually ruled that such a reason did not exist.

The trial judge ruled that the judgment for dissolution of marriage was to be entered, and judgment was in fact entered. Next, on July 11, 1988, Nicholas filed a written motion to vacate the judgment. In this motion, Nicholas argued that Dolores had failed to inform the court about certain marital assets within her control. Dolores had, at her deposition, testified that she had a vested pension in the amount of $24,000, personal bank accounts, a life insurance policy and additional policies on the children's lives, and savings bonds. Nicholas further argued that the money in the PaceSetter account had been his own, nonmarital funds, as opposed to a marital asset. The trial court denied the motion to vacate the judgment, excepting that the court ordered a hearing on the issue of whether the PaceSetter account was a marital asset or not.

On March 14, 1989, a hearing was conducted to determine if the PaceSetter account was a marital asset or not. Nicholas testified that when he was a teenager, he worked stripping down machines, and that during this time he saved about $4,000. He kept this money at his home. From 1959-1963, Nicholas served in the United States Navy. During this time he saved about $12,000, which he also kept in cash at his mother's home. In 1961, Nicholas married Barbara Meyers. The wedding was paid for by the parents of the bride and groom. Nicholas and his first wife received $7,000 in wedding gifts, which, again, he kept at his parents' house. Nicholas was divorced from his first wife in 1964, but he kept the wedding gift money.

After he left the service, Nicholas further testified, he lived with his parents for two years, during which time his parents supported him—paying for his meals and vacations. He worked as a lithographer during this time, and also as a hobby made two boats, which he sold for $1,200 and $800, respectively. He also sold a motorcycle for $1,800 during this time.

On July 10, 1965, Nicholas married Dolores. At the time of the marriage, Dolores had no knowledge of the cash he had accumulated before the marriage. About a year into the marriage, Nicholas brought the cash to the couple's apartment, and at this point in time Dolores did have knowledge of the funds. Later, he returned the cash to his parents' house again. After they moved, however, the money (amounting to about $25,000) was placed in a certificate of deposit (CD) in the First Bank of Morton Grove. He and Dolores both had signature cards for the CD. The account read: "Nicolette and Todd, minor, by Dolores or Nicholas Romashko."

When the CD matured in October of 1982, Nicholas placed the money in the PaceSetter account at his place of employment, A.B. Dick Company. The money in this CD was in the name of Nicholas and Dolores with Nicolette and Todd again listed. When the funds from the Pace Setter account matured, Nicholas deposited the funds into an account at Skokie Federal Savings and Loan Association. This was April of 1985, and at this time the couple was having marital difficulties. Dolores was told that the funds were deposited at Skokie Federal.

On August 31, 1985, Nicholas testified, he withdrew the funds from Skokie Federal. The money was placed in a safe in the basement of the couple's home. Dolores was aware of this, and she knew the combination to the safe. Nicholas allocated the money for family expenses and some of it ($450) was used to purchase a washing machine. Substantial portions of it were used to repay loans Nicholas

had taken from individuals in recent years. $4,800 was repaid to Bud Pulack, $2,400 was repaid to Nicholas' sister, and $2,500 was repaid to Nicholas' mother. Nicholas further used $1,300 to repay attorney fees he owed. In late September 1986, after the dissolution proceedings had been filed, Nicholas took what was left, $9,000, and spent the money in Las Vegas. He returned from the trip with only a few hundred dollars. After September of 1986, there was no money left from the original $25,000 that he had.

Dolores also testified at the hearing. She testified that during her marriage to Nicholas, for a couple of years, he supplemented his income by processing negatives in a darkroom in the basement. Eventually, he sold the business and the equipment. Though she did the billing for him, she did not know how much money was involved.

She worked during the marriage except for about 2½ years. Sometimes she worked part time and sometimes she worked full time. She and Nicholas had a joint checking account until they separated in April of 1986. In 1985, Dolores had her own checking account, and she used the money she earned for household expenses and to support the children. Dolores was never made aware of Nicholas' indebtedness to his mother, sister, or Bud Pulack. Nicholas never told her that he had accumulated large sums of money before marrying her.

After hearing the testimony of both Dolores and Nicholas, the trial court ruled that the PaceSetter account money was in fact a marital asset, and the prior disposition of the property was reinstated.

The first issue we address is whether the trial court erred in denying Nicholas' second, July 11, 1988, motion to vacate the judgment for dissolution of marriage. Unnecessary to the disposition of this appeal are the questions of whether the trial court properly refused to grant Nicholas a continuance at the *ex parte* trial or whether Nicholas' first motion to vacate should have been granted. Additionally, we wish to make clear that Nicholas does not challenge the trial court's ruling that there were valid grounds to dissolve the marriage, and our holding in no way addresses that determination.

The motion was brought under section 2—1301(e) of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1301(e)), which provides: "The court may in its discretion, before final order or judgment, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable." While the court below and the parties variously referred to the initial hearing in this manner as a "default" proceeding, the matter is more appropriately refer-

enced as a judgment on the merits following an *ex parte* hearing. See, *e.g., In re Marriage of Garde* (1983), 118 Ill. App. 3d 303, 307, 454 N.E.2d 1065.

The purpose behind section 2—1301(e) is to afford a party post-judgment relief by permitting the vacation of judgment where facts exist which, had they been known to the trial court, would have precluded judgment. (*Anglin v. Dearth* (1988), 175 Ill. App. 3d 367, 369, 529 N.E.2d 1176.) "In ruling on a section 2—1301(e) motion to vacate, the overriding concern is whether or not substantial justice is being done between the litigants, and specifically whether it is reasonable under the circumstances to compel the nonmovant to proceed to trial on the merits." (*Havana National Bank v. Satorious-Curry, Inc.* (1988), 167 Ill. App. 3d 562, 564, 521 N.E.2d 645.) Whether a section 2—1301(e) motion to vacate should be granted lies within the sound discretion of the trial court. (*Espedido v. St. Joseph Hospital* (1988), 172 Ill. App. 3d 460, 467, 526 N.E.2d 664.) Due diligence and a meritorious defense are factors in determining whether section 2—1301(e) relief should be granted, although they need not necessarily be alleged. Additional factors to be considered include residence of the nonmovant (in or out of State), the severity of the penalty as a result of judgment and the hardship on the nonmovant if they are required to go to trial. See *Durham v. Rockford Mutual Insurance Co.* (1988), 169 Ill. App. 3d 211, 213, 523 N.E.2d 670.

Nicholas' motion sought to have the "*ex parte* judgment entered June 13, 1988," vacated. In it, Nicholas asserted that he had a meritorious defense, and that Dolores had failed to inform the court (at the *ex parte* trial) that there were marital assets that needed to be considered and disposed of by the court. Nicholas specified such matters that needed to be brought to the trial court's attention as the fact that Dolores had a vested pension in the amount of $24,000, that she had life insurance with her employer and life insurance policies of the children, that she had personal bank accounts and savings bonds in her possession, that she also had cashed a life insurance policy, that portions of the marital assets were spent by her on nonmarital expenses, and that her mother was not owed anything by the couple.

Nicholas was allowed to argue that Dolores had testified at her deposition inconsistently to the testimony at the *ex parte* trial; further, that Dolores had failed to inform the court about assets in her possession at that time. After argument, the court determined that with the exception of the issue relating to the PaceSetter account, the motion would be denied. That matter was then set for an evidentiary hearing. The court in ruling indicated that the matters brought to its

attention by Nicholas (excepting the PaceSetter matter) had not entered into its granting judgment, and that "any marital assets that exist that were not disposed of by this judgment can always be corrected by the virtue of post trial motion." The trial court indicated that once the PaceSetter matter was disposed of, she would certify the matter as a final and appealable order.

■ Although we appreciate that the trial judge was managing an extremely congested docket, we nonetheless feel that it was an abuse of discretion to deny Nicholas post-judgment relief with respect to the second section 2—1301 motion. That motion asserted that Nicholas had a meritorious defense, and specified numerous alleged marital assets that the trial court did not consider in entering judgment as to the disposition of the property. While a meritorious defense is not a requirement, Nicholas did assert that Dolores had contradicted herself with respect to some of the assets the court disposed of in the judgment, and that Dolores never informed the trial court of substantial marital assets in her possession. Further, after the initial trial date, Nicholas pursued section 2—1301 relief by filing his initial motion within two weeks, and his second motion within the 30-day period the statute provides.

An examination of other relevant factors supports our determination. Dolores was an in-State resident, and thus would not incur significant travel expenses or be forced to be away from her home during additional proceedings. The severity of the hardship to Nicholas if he were not allowed to litigate his claim in full would be great. As Nicholas points out in his brief, after Nicholas would reimburse Dolores pursuant to the terms of the judgment, he would in the end receive a much lesser proportion of the marital assets. Nicholas earns only $7 per hour, and the possibility that he is erroneously required to pay even only a few thousand dollars more than he should properly pay would represent a great hardship to him. We see, moreover, no great hardship to Dolores were the case to be fully litigated. As indicated, she is a resident of the State, and her case has thus far not required the importation of witnesses from out of State or the necessity of hired witnesses. The trial court, moreover, could have significantly lessened whatever hardship Dolores could have incurred by conditioning vacature of the judgment upon Nicholas reimbursing Dolores for any unnecessary lost work time, and/or requiring Nicholas to pay Dolores' attorney fees. (See, e.g., Andreasen v. Suburban Bank of Bartlett (1988), 173 Ill. App. 3d 333, 340, 527 N.E.2d 595.) The majority of these factors were not considered during the argument on the motion to vacate the judgment, and we hold that substantial jus-

tice was not accomplished in the denial of the second section 2—1301 motion. As a result, we remand the matter for a new trial on the disposition of the assets of the marriage, except as to the credit union matter.

■■ ■ We next consider Nicholas' contention that the trial court erred in ruling that respondent's credit union account was marital property. Under section 503 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 503(b)), "all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage *** including non-marital property transferred into some form of co-ownership between the spouses, is presumed to be marital property." Nicholas attempted to overcome this presumption by showing that the PaceSetter funds were acquired before marriage, and thus not subject to distribution. However, because (as Nicholas acknowledges) the subject funds were placed in a form of co-ownership, even if Nicholas had shown that the funds were acquired before marriage, a presumption arises that a gift of the property to the marriage was made and the property is considered marital property. (See *In re Marriage of Emken* (1981), 86 Ill. 2d 164, 427 N.E.2d 125.) In dissolution proceedings, a "donor" spouse may rebut the presumption of gift with clear, convincing evidence. *In re Marriage of Rink* (1985), 136 Ill. App. 3d 252, 257, 483 N.E.2d 316.

■■ ■ The distribution of marital property rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion—"where no reasonable man would take the view adopted by the trial court." (*In re Marriage of Rink*, 136 Ill. App. 3d at 257.) Dolores testified that the funds were accumulated in the course of the marriage, and Nicholas testified, as detailed previously, that the funds were accumulated prior to the marriage. The trial judge was in the best position to resolve this conflict in testimony, and it was for the trial judge to consider the credibility of the testimony. As the court indicated in *In re Marriage of Stallings* (1979), 75 Ill. App. 3d 96, 100, 393 N.E.2d 1065, it is the trial court's function to resolve conflicting testimony by assessing the credibility of the witnesses and the weight to be accorded their testimony. The trial court indicated, correctly we think, that Nicholas' testimony was incredible as to the manner in which he accumulated the money before marriage. Specifically, we agree with the trial court that Nicholas' testimony that $7,000 was derived from wedding gifts from a previous marriage was unbelievable. As was shown at trial, that marriage lasted only a couple of months, the couple did not live together, and though Nicholas' first wife was represented by an attorney, no claim was

made for the wedding gift money in the divorce proceedings. We thus agree that Nicholas did not establish that the PaceSetter funds were nonmarital property, not subject to division. We note additionally that even if Nicholas had established that the funds were accumulated by him prior to marriage, we agree with the trial court that Nicholas did not rebut the presumption of a marital gift which arose when the funds were repeatedly put in a form of co-ownership.

We therefore hold that the trial judge's determination that the PaceSetter funds were marital property was not error, and her dividing those funds not an abuse of discretion.

Accordingly, the judgment of the circuit court is reversed with respect to the denial of Nicholas' second 2—1301 motion, and, excepting as to the credit union funds determination, the cause is remanded for a new trial on the disposition of the marital assets. The trial court's ruling that the credit union funds were marital property and the trial court's disposition of those funds are affirmed.

Affirmed in part; reversed in part and remanded for further proceedings.

EGAN and LaPORTA, JJ., concur.