FIRST NATIONAL BANK OF BLUE ISLAND, Plaintiff-Appellee, v. BOARD OF MANAGERS OF FAULKER HOUSE CONDOMINIUM ASSOCIATION *et al.*, Defendants (Jack Davis, Intervening Defendant-Appellant).

First District (2nd Division)   Nos. 1—92—1789, 1—92—2483 cons.

Opinion filed August 10, 1993.

David A. Novoselsky & Associates, of Chicago (David A. Novoselsky and Margarita T. Kulys, of counsel), for appellant.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Cynthia G. Swiger and Ethan E. Trull, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff First National Bank of Blue Island (the Bank) obtained orders of foreclosure and sale for two condominium units, which intervenor Jack Davis purchased at the subsequent sheriff's sale. Unbeknownst to Davis, however, Midwest Partnership had already purchased the back taxes for the same units. The tax deeds then were issued to Midwest Partnership after confirmation of one of the sheriff's sales and prior to confirmation of the other, so Davis intervened in these two foreclosure proceedings to petition for vacatur of the orders confirming the sheriff's sales. Both circuit courts denied the motions. We affirm.

Plaintiff Bank became the mortgagee of the units in February 1988. One year later, Midwest Partnership purchased the units' taxes for 1987 and 1988. Almost two years passed, and in December 1990, the Bank filed complaints to foreclose the trust deeds. Among the allegations was that the mortgagors had not paid the 1987 and 1988 property taxes. In June 1991, the Bank sought summary judgment on the foreclosure actions. That same month, the Bank was sent a notice of the tax purchases redemption period

deadline, which was November 27, 1991; at trial, however, the Bank denied receiving this notice.

In September 1991, the circuit court granted the Bank's summary judgment motions for foreclosure, which allowed them to be sold by the sheriff. Those orders contained the following provision:

> "The subject property is offered for sale without any representation as to quality or quantity of title and without recourse to [the Bank]."

The published notices of the sheriff's sale included the same disclaimer. The judgments of foreclosure also contained statutory language that upon confirmation of the sale, the sheriff was to issue to the purchaser "a deed sufficient to convey title" and that the conveyance "shall be an entire bar to all claims of the parties *** and all claims of Unknown Owners and any Nonrecord Claimants." Davis bought the units at the sheriff's sale on December 3, 1991, that is, six days after the tax redemption period had ended. On December 26, 1991, the circuit court entered an order confirming one of the sheriff's sales (the December 26 order), and the property was conveyed to Davis the next day. He did not record the deed. On January 17, 1992, in a separate proceeding, the other sale was confirmed (the January 17 order). On December 30, 1991, however, the judge in the tax proceedings had ordered issuance of tax deeds for both units to Midwest Partnership.

On January 27, 1992, the Bank's attorney told Davis that it "ha[d] become aware that a court action [was] pending which may adversely affect [his] interest" in the units. Approximately two weeks later, on February 14, 1992, Davis moved to intervene and to vacate the January 17 order, asking the court to declare the sale void; 12 days later, he made the same request for the December 26 order. In the latter proceeding, the court decided to relax the due diligence and meritorious claim requirements, but it denied the requested relief. It reasoned that the doctrine of *caveat emptor* applied to the sheriff's sale and that the exceptions for fraud, misrepresentation, and mistake of fact did not. Vacatur of the other order was also denied, but there is neither a record of proceedings nor a reason given in the order itself.

## I

As our supreme court recently observed:

> "There are two types of post-judgment motions: the most common type which challenges the judgment, basing its attack upon facts apparent at the time the judgment was ren-

dered, and another type which raises new facts or matters which were not presented to the court or considered by it when it ruled, but which, arguably, would have prevented rendition of the judgment had they been known to the court. A primary requisite of the latter type of post-judgment motion is that the newly discovered evidence was in fact 'newly discovered' and was not previously discoverable prior to judgment by the exercise of ordinary diligence." (*Andersen v. Resource Economics Corp.* (1990), 133 Ill. 2d 342, 347-48, 549 N.E.2d 1262, 1265 (absence of valid post-judgment motion results in no appellate jurisdiction).)

The orders here concern the "latter type" because Davis' argument is that, had the circuit courts known that the units had been sold for taxes and that the redemption period had ended, they would not have confirmed the sales.

Initially, we note that the two orders here present different procedural postures. The December 26 order was attacked more than 30 days after the judgment was entered, so a petition under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1401) was the proper vehicle for requesting relief from that order. The purpose of such petitions is to present evidence that, if known at the time of the judgment, would have prevented the court from entering it; the statute is to be liberally construed to achieve justice, and its application invokes a court's equitable powers. (*In re Marriage of Hoppe* (1991), 220 Ill. App. 3d 271, 282-83, 580 N.E.2d 1186, 1192-93.) To prevail, a petitioner must demonstrate by a preponderance of the evidence in the common law record or, if there is a factual dispute, at an evidentiary hearing, that:

"(1) a meritorious claim or defense exists; (2) the petitioner exercised due diligence in discovering the defense or claim in the original action; (3) despite such diligence and through no fault on the part of petitioner, the error of fact or valid claim or defense was not made apparent to the trial court at the time of the original action; and (4) petitioner exercised due diligence in the section 2—1401 petition." (*Marriage of Hoppe*, 220 Ill. App. 3d at 282, 580 N.E.2d at 1193, citing *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 220-21, 499 N.E.2d 1381, 1386, and other cases.)

(See generally *Klein v. La Salle National Bank* (1993), 155 Ill. 2d 201, 205-06, 613 N.E.2d 737, 739; *Kaput v. Hoey* (1988), 124 Ill. 2d 370, 377-78, 530 N.E.2d 230, 236.) The reasonableness of a petitioner's reasons for delay must be considered in light of all the circum-

stances surrounding entry of the challenged judgment, including the conduct of the litigants and their attorneys, and equity requires a liberal construction so that justice is served. (*Marriage of Hoppe*, 220 Ill. App. 3d at 282-83, 580 N.E.2d at 1193.) The circuit court's ruling on the petition will be reversed only if it represents an abuse of discretion. *Klein*, 155 Ill. 2d at 206, 613 N.E.2d at 739.

By contrast, Davis filed his motion attacking the January 17 order within 30 days of its entry, so in that proceeding he could proceed instead under section 2—1301(e) (Ill. Rev. Stat. 1991, ch. 110, par. 2—1301(e)). (*Anglin v. Dearth* (1988), 175 Ill. App. 3d 367, 529 N.E.2d 1176 (explaining difference between these mutually exclusive remedies).) The standard applied to section 2—1301 motions is far less onerous than that for section 2—1401 petitions: one need neither establish the existence of a meritorious claim or defense on the face of the motion nor show due diligence or good cause for the delay. (*Andreasen v. Suburban Bank* (1988), 173 Ill. App. 3d 333, 340, 527 N.E.2d 595, 601 (distinguishing between standards for setting aside default judgment under the two statutes); see also *People ex rel. Reid v. Adkins* (1971), 48 Ill. 2d 402, 406, 270 N.E.2d 841, 843 ("overriding consideration now is whether or not substantial justice is being done between the litigants and [if order was a default judgment,] whether it is reasonable, under the circumstances, to compel the other party to go to trial on the merits"); *In re Marriage of Romashko* (1991), 212 Ill. App. 3d 1018, 1024, 571 N.E.2d 995, 999 (due diligence and meritorious defense are factors, as is severity of penalty as result of the judgment).) Like the rulings on section 2—1401 petitions, however, decisions on motions under section 2—1301 are within the court's discretion. *Romashko*, 212 Ill. App. 3d at 1024, 571 N.E.2d at 999; *Day v. Curtin* (1989), 192 Ill. App. 3d 251, 254, 548 N.E.2d 670, 672-73 (abuse of discretion, including violation of right to fundamental justice); but see *Campbell v. White* (1989), 187 Ill. App. 3d 492, 503, 543 N.E.2d 607, 614 (question on appeal from denial of motion is not abuse of discretion but whether substantial justice has been done between parties), *appeal denied* (1990), 129 Ill. 2d 561, 550 N.E.2d 553.

## II

Davis contends that the circuit court should have vacated the confirmation orders and set aside the sales because the Bank committed constructive fraud, which he defines as "any act, statement or omission that amounts to positive fraud or that courts construe as fraud because of its detrimental effect upon public interests and

public or private confidence," quoting *Beaton & Associates, Ltd. v. Joslyn Manufacturing & Supply Co.* (1987), 159 Ill. App. 3d 834, 843-44, 512 N.E.2d 1286. Any contract may be declared void on proof of misrepresentation or fraud, he explains, and given that the Bank's foreclosure complaint included an allegation concerning the tax purchase, it doubtless knew that Midwest Partnership had purchased the units' back taxes and that unless the units were redeemed by November 27, 1991, Midwest Partnership would be entitled to title to the units. Because the Bank knew that the redemption period had expired prior to the sheriff's sale, he continues, it also must have known that the sheriff could not execute a deed "sufficient to convey title" to the units, as required by both the foreclosure statute and the sale order, because title to the units was with Midwest Partnership. Worse yet, Davis argues, despite this knowledge, the Bank nevertheless bid on the units at the sheriff's sale, which surely constitutes fraud in light of the presumption under *Johnson v. Zahn* (1942), 380 Ill. 320, 324, 44 N.E.2d 15, 17, that the Bank would bid the fair market value of the units. Davis likewise disputes the Bank's characterization of the question presented to the circuit court as one of the quality or quantity of the Bank's title, contending that the only inquiry is whether the Bank engaged in fraudulent conduct and thus, under the doctrine of unclean hands, was unworthy of the equitable remedy of foreclosure.

▆▆ ▆ As Davis apparently concedes, there can be little question that the doctrine of *caveat emptor* applies to judicial sales except in cases of fraud, misrepresentation, or mistake. (*Checkley & Co. v. Citizens National Bank* (1969), 43 Ill. 2d 347, 349, 253 N.E.2d 441, 443.) As a preliminary matter, we note that even if we were to consider Davis' argument of constructive fraud, which he did not bring to the attention of the circuit court, we would be obliged to reject it, for courts uniformly refuse to find constructive fraud outside the context of a fiduciary or other confidential relationship (*Maguire v. Holcomb* (1988), 169 Ill. App. 3d 238, 242-43, 523 N.E.2d 688, 691). Even in *Beaton*, the case cited by Davis for the definition, the court made plain that the existence of a fiduciary relationship is a prerequisite for a finding of constructive fraud. In this arm's length transaction, however, there was no foundation whatsoever from which a court might infer a relationship of trust and confidence between Davis and the Bank on which to ground a finding of constructive fraud.

Given that Davis does not claim that the parties were mistaken, the only other exception to the doctrine, we treat his challenge as

one based on actual fraud. Accordingly, the question before the circuit court was whether, when the Bank put the units up for the sheriff's sale with the actual or implied knowledge that the tax redemption period would end prior to that sale and that issuance of the tax deeds would occur soon thereafter, the Bank intentionally made a false statement of, or concealed, material facts, which Davis then relied on to his detriment as the Bank intended. *Tague v. Molitor Motor Co.* (1985), 139 Ill. App. 3d 313, 316, 487 N.E.2d 436, 438.

■ Despite the apparent harshness of the result, we agree with the circuit courts that under the circumstances of this case, the fraud exception to the *caveat emptor* doctrine does not apply, so Davis had no right to vacatur of the confirmation orders. Here, information concerning the tax proceedings was certainly material, but it was readily available both in public records and in the complaints for foreclosure, so the Bank cannot be said to have concealed it. Likewise, the Bank made no false statements concerning the title to the units, and in fact the disclaimers in the foreclosure orders and in the published notices of sale made plain that the purchaser would assume the risk of any defect in title. As for Davis' argument that the sheriff was unable to issue "a deed sufficient to convey title," we interpret this statutory provision to concern the nature of the deed, not the soundness of the title, in light of the long history in Illinois of the application of the doctrine of *caveat emptor* to all judicial sales, a history that the Illinois Mortgage Foreclosure Law (Ill. Rev. Stat. 1991, ch. 110, par. 15—1101 *et seq.*) does nothing to negate. Consequently, we hold that the circuit courts did not abuse their discretion in refusing to vacate the confirmation orders. Given this disposition, we need not address the timeliness of Davis' petition.

For the reasons stated above, we affirm the judgments of the circuit court.

Affirmed.

McCORMICK, P.J., and HARTMAN, J., concur.