**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180650-U

Order filed April 22, 2021
Modified Order Upon Denial of Rehearing filed July 13, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| FIRST MIDWEST BANK, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| PRIME MARKET TARGETING, INC., an | ) | |
| Illinois corporation; CHICAGO TITLE LAND | ) | |
| TRUST COMPANY, as successor to North Star | ) | |
| Trust Company, as Trustee under Trust | ) | |
| Agreement Dated March 24, 2004, and Known | ) | |
| as Trust No.: HTH2300; UNITED STATES OF | ) | Appeal No. 3-18-0650 |
| AMERICA SMALL BUSINESS | ) | Circuit No. 17-CH-1102 |
| ADMINISTRATION; SCOTT L. DUFF; | ) | |
| UNKNOWN OWNERS and NON-RECORD | ) | |
| CLAIMANTS, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| (Prime Market Targeting, Inc., Chicago Title | ) | |
| Land Trust Company, and Scott L. Duff, | ) | Honorable |
| | ) | Mark Thomas Carney, |
| Defendants-Appellants). | ) | Judge, Presiding. |

JUSTICE DAUGHERITY delivered the judgment of the court.
Justice Holdridge concurred in the judgment.
Justice Wright dissented.

**ORDER**

¶ 1      *Held*:   The trial court did not abuse its discretion by denying defendants' section 2-1301(e) motion to vacate the order of default and the default judgment of foreclosure and sale.

¶ 2      Plaintiff, First Midwest Bank, filed a complaint for foreclosure and other relief against, among others, defendants, Prime Market Targeting, Inc. (Prime), its president, Scott L. Duff, and Chicago Title Land Trust Company (Chicago Title). The trial court granted First Midwest Bank's motion for an order of default and a default judgment of foreclosure and sale. Three months later, before the scheduled sale of the commercial property, defendants' newly retained counsel entered an appearance and filed a timely emergency motion under section 2-1301(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1301(e) (West 2016)), seeking, in part, to vacate the order of default and the default judgment of foreclosure and sale. The trial court denied defendants' motion to vacate. Defendants appeal. We affirm the trial court's judgment.

¶ 3                          I. BACKGROUND

¶ 4      This case involves commercial property located in Frankfort, Illinois. The record on appeal describes the commercial property as "a one story, with partial 2nd floor, brick office building," containing three commercial units that was built around 2003. The commercial property is situated on 2.11 acres of land and is comprised of 14,800 square feet. Prime occupied one of the three commercial units on the property.

¶ 5      In November and December 2013, Duff, as president of Prime, executed three promissory notes and business loan agreements with First Midwest Bank's predecessor in interest on behalf of Prime. Also in December 2013, Chicago Title executed a mortgage and an assignment of rents with First Midwest Bank to secure Prime's payment of the promissory notes. The documents were duly recorded. Around that time and over the next three years, Duff, in his personal capacity, executed various commercial guaranties to pay the three promissory notes in

the event of a default by Prime. In March 2017, Prime and Duff allegedly ceased all business operations and stopped making payments on the promissory notes.

¶ 6        As a result, in June 2017, First Midwest Bank filed a complaint for foreclosure on the mortgage for the commercial property and for other relief. Counts I, II, and III of the complaint alleged Prime and Duff defaulted on the promissory notes by ceasing business operations and stopping payments. First Midwest Bank requested the amounts due on the three promissory notes (approximately $939,000, $563,000, and $278,000), plus fees and interest, respectively.

¶ 7        Count IV alleged that Duff, in his personal capacity, executed various commercial guaranties, attached to the complaint, to pay the promissory notes upon a default by Prime.[1] Since Prime allegedly defaulted on its obligations under the terms of the promissory notes, First Midwest Bank asserted that Duff was personally liable for the total amount due and owing on the notes, approximately $1.8 million.

¶ 8        Count V was filed under section 15-1101 of the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1101 *et seq*. (West 2016)) to foreclose on the mortgage for the commercial property. Prime; Duff; Chicago Title, as mortgagor and owner of the commercial property; the United States Small Business Administration (SBA); and all unknown owners and non-record claimants of the commercial property were named as defendants.[2] The SBA, like First Midwest Bank, held a promissory note for the commercial property. The amount owed on the mortgage was not to exceed $2,044,000. Further, First Midwest Bank stated that Chicago Title waived its right of redemption under the mortgage. Alternatively, First Midwest Bank

---

[1] Count IV was mislabeled as count III.

[2] Chicago Title was named as a defendant as a successor in interest to North Star Trust Company, as Trustee under Trust Agreement dated March 24, 2004, and known as Trust No. HTH2300.

asserted that since commercial property was involved, section 15-1603(b)(2) of the Foreclosure Law (735 ILCS 5/15-1603(b)(2) (West 2016)) governed. As for relief in Count V, First Midwest Bank requested a judgment of foreclosure and sale, a finding that Chicago Title waived its right of redemption, a deficiency judgment against Prime and Duff, fees and costs, possession of the commercial property, and termination of defendants' interest in the commercial property or a finding that First Midwest Bank had a superior interest in the commercial property.

¶ 9     In June 2017, First Midwest Bank served process on Chicago Title. Around that same time, First Midwest Bank also served all unknown owners and non-record claimants of the commercial property by publication. However, Prime and Duff were not served until December 2017.[3, 4] At a prior hearing, First Midwest Bank's attorney described the unsuccessful attempts to serve Prime and Duff with process as follows:

> "The problem with my process server was they went out to the property, they saw that it looked empty. They called the number of the business, which was disconnected. [Duff] had been there every single day. They just didn't apparently do their due diligence to figure that out. So

---

[3] In July and October 2017, First Midwest Bank was required to obtain leave to issue alias summonses for Prime and Duff.

[4] Before Prime and Duff were served with process, the trial court granted First Midwest Bank's motion for the appointment of a receiver under sections 15-1701 through 15-1706 of the Foreclosure Law (735 ILCS 5/15-1701 through 15-1706 (West 2016)). The receiver was empowered with all duties, responsibilities, and powers stated in the Foreclosure Law. In October 2017, the receiver submitted a report to the trial court. The receiver stated that in July 2017, he visited the commercial property and met with Duff. The parties walked the premises and reviewed the trial court's order appointing a receiver, as well as Prime's finances, operations, and documents and information that were required to be turned over to the receiver. The receiver tendered to the tenants of the property a notice of receivership and a copy of the trial court's order. Further, the receiver stated that on numerous occasions, he met with Duff to review Prime's finances and accounting records. To secure the assets remaining at the commercial property, which were pledged to First Midwest Bank as collateral, the receiver allegedly authorized Duff's removal of personal property and Prime's records in exchange for an agreement to vacate the premises. The receiver acknowledged that Duff had listed the commercial property for sale through a real estate broker with whom the receiver kept regular contact.

now [Duff] is not there every day, but I do have a good home address for him. So I'll seek to serve him there."

¶ 10 First Midwest Bank completed service of process on Prime, Duff, Chicago Title, and all unknown owners and non-record claimants of the commercial property by, at the latest, December 1, 2017. However, those defendants did not respond by filing an appearance or an answer to First Midwest Bank's complaint.[5] In March 2018, First Midwest Bank filed a motion for an order of default and for a default judgment of foreclosure and sale. First Midwest Bank attached a certificate of no appearance or answer, an affidavit from First Midwest Bank's vice president of special assets, and an affidavit for attorney fees and costs.

¶ 11 Later that same month (March 2018), the trial court granted First Midwest Bank's motion for an order of default. That same day, a notice of the order of default was sent to Prime, Duff, and Chicago Title. The following month, in April 2018, the trial court held a hearing on First Midwest Bank's motion for default judgment of foreclosure and sale. Duff informally appeared for Prime and discussed offers to purchase the commercial property as follows:

"[W]e do have an offer on the table, a cash offer for 1.5 million. The SBA has had it to review it. We have been in this situation before, and this past September we had another 1.5 plus million dollar offer, but it was time sensitive. The buyer needed to file for permits for health, and the process took eight weeks, and we've already taken three now. We wouldn't be in this position right now if that deal had gone through, but the buyer had to reluctantly pull the offer because of the time. So I'm just

---

[5] The SBA filed an appearance and answer to First Midwest Bank's complaint. Summary judgment was later entered against the SBA. The SBA did not appeal that judgment.

asking for 30 more days[] *** [t]o make sure that the SBA approves this offer, the one that's currently on the table."

After First Midwest Bank stated its opposition to Duff's request for additional time, the trial court entered a default judgment of foreclosure and sale.

¶ 12        Regarding a redemption period, the trial court stated, Chicago Title "waived its right to redemption pursuant to page 12 of the Mortgage. Alternatively, the property subject to this action is a non-residential commercial building, and as such, shall be governed by Section 1603(b)(2)" of the Foreclosure Law. Further, the trial court found the amount due on the promissory notes related to the property was approximately $2.6 million. The trial court established the priority of indebtedness as follows: (1) approximately $1.011 million to First Midwest Bank, representing one promissory note; (2) approximately $732,000 to the SBA, representing one promissory note; and (3) approximately $856,000 to First Midwest Bank, representing two promissory notes. The commercial property was deemed free and clear of all other liens and encumbrances.

¶ 13        In July 2018, First Midwest Bank filed a notice of foreclosure and sale to take place in August 2018. Later that same month (July 2018), defendants' newly retained counsel entered an appearance in the trial court and filed an emergency motion to vacate the order of default and the default judgment of foreclosure and sale under section 2-1301(e) of the Code. Defendants also sought to cancel the scheduled sale of the commercial property and to compel First Midwest Bank's acceptance of a short-sale offer.

¶ 14        In support of the motion to vacate, defendants asserted that since the default orders were neither final nor appealable, the default orders could "properly be vacated and held for naught." Defendants asserted further that substantial justice required that they be allowed the opportunity to mount a meritorious and vigorous defense to the action.

6

¶ 15        In the motion to vacate, defendants also advised the trial court that in September 2017, they procured a purchaser for the commercial property. First Midwest Bank refused to approve the offer, totaling $1.5 million, as a short sale, unless the SBA released its lien on the commercial property. Defendants requested a release of the lien, but by the time approval was received from the SBA, the pending offer was withdrawn. Defendants later received another offer for the commercial property for which the SBA agreed to release its lien in June 2018. That offer was later increased to $1.5 million. Defendants, therefore, sought, among other things, to vacate both the order of default and the default judgment of foreclosure and sale.

¶ 16        The day after the motion to vacate was filed, the trial court continued the August 2018 sale date of the property until October 2018.  Defendant's motion to vacate was scheduled for a hearing to take place in September 2018.  However, at some point prior to the hearing date, the offer for the commercial property, relied upon in the motion to vacate, was withdrawn. The court was informed the proposed sale was off the table. Defendants alleged the prospective buyer was reluctant to move forward after learning of the sale scheduled for October 2018.

¶ 17        After the September 2018 hearing, the trial court denied defendants' motion to vacate. The written order included Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) language for an appeal. Defendants thereafter filed a timely appeal.

¶ 18                     II. ANALYSIS

¶ 19        On appeal, defendants present three issues for our review. First, defendants challenge the trial court's appointment of a receiver for the commercial property before Prime and Duff were served with process. However, that particular issue was not presented to the trial court. Therefore, we conclude that the issue is forfeited and may not be presented for the first time on appeal. See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996).

¶ 20 Second, defendants argue on appeal that the trial court erred by entering a default judgment of foreclosure and sale in favor of plaintiff. Whether the trial court erred in entering the judgment of foreclosure is reviewed under a *de novo* standard. *U.S. Bank v. Kosterman*, 2015 IL App (1st) 133627, ¶ 11. A defendant in a mortgage lawsuit is expected to file a written appearance and a responsive pleading to the complaint within 30 days after service. Ill. S. Ct. R. 181(a) (eff. Jan. 4, 2013). By defaulting, a defendant admits all the well-pleaded allegations of the complaint, including the allegations that the bank held an interest in the property. *Deutsche Bank National Trust Co. v. Snick,* 2011 IL App (3d) 100436, ¶ 9. Entry of a valid default judgment for want of an appearance or failure to plead requires: (a) jurisdiction; (b) default; (c) notice (sometimes); (d) prove up. *State Bank of Lake Zurich v. Thill,* 113 Ill. 2d 294, 308 (1986). If all of those requirements are met and the court has subject matter and personal jurisdiction, a valid default judgment may be entered. *Id.*

¶ 21 Upon conducting our review in the present case, we reject the defendants' argument the trial court erred in entering the default judgment of foreclosure and sale. The default hearing occurred more than 90 days after defendants were served with summons. The defendants had not answered or otherwise appeared. Defendants were given notice of the entry of default order and notice of hearing for entry of default judgment of foreclosure and sale. The motion for default judgment was supported by the appropriate affidavit from the bank's president of special assets. Defendant Duff personally appeared in court in April 2018 but never formally entered an appearance. He made no requests to the court except for an additional 30 days to allow the SBA time to approve a pending offer. He made no request to vacate the default order of March 2018 nor to postpone entry of the judgment of foreclosure. All of the requirements for entering a valid default judgment have been met.

¶ 22    Defendants argue the court should have vacated the default without a request from the defendants. They rely on *Stotlar Drug Co. v. Marlow,* 239 Ill. App. 3d 726 (1993). *Stotlar*, however, is unavailing. In *Stotlar*, the defendant appeared and filed an answer and counterclaim within two weeks of the entry of default and made an oral request to the court to vacate the default. None of those facts are present in this case. In the absence of any authority that a trial court must vacate a default order without a request from the defendant, we reject defendants' contention that the trial court erred in entering the judgment of foreclosure and sale.

¶ 23    Third, defendants argue on appeal that the trial court abused its discretion in denying their motion to vacate the default judgment. The parties agree the motion to vacate default judgment under section 2-1301(e) was timely filed. A substantial-justice standard applies to motions made pursuant to that statute. There is no precise definition of substantial justice, but relevant factors include: (1) the diligence, or lack thereof, on the part of the defaulter; (2) the presence or absence of a meritorious defense by the defaulter; (3) the severity of the penalty resulting from entering the default order; and (4) the relative hardship on the parties arising from the grant or denial of the default. *Northern Trust Co. v. American National Bank and Trust Co. of Chicago*, 265 Ill. App. 3d 406, 412 (1994). Rights of the plaintiff and other litigants must be respected in "doing substantial-justice." *Farm Credit Bank of St. Louis v. Schwarm*, 251 Ill. App. 3d 205, 211 (1993) (affirming a foreclosure judgment). An appellate court reviews a denial of such motions under an abuse of discretion standard. *Wells Fargo Bank, N.A. v. Hansen,* 2016 IL App (1st) 143720, ¶ 14.

¶ 24    Our supreme court has adopted a liberal policy in favor of vacating default judgments based on timely section 2-1301(e) motions. *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 16. In *Wells Fargo Bank, N.A. v. McCluskey*, the supreme court quoted the Illinois

9

Practice Series for the proposition that section 2-1301(e) is "marked by a liberal policy toward the vacation of default judgments, *and imposes few requirements to sustain a determination in the defendant's favor.*" (Emphasis added.) See *id*. (quoting 4 Richard A. Michael, Illinois Practice, Civil Procedure Before Trial § 42:5 (2d ed. 2011)). The supreme court has also stated the law prefers when controversies are decided by the parties' substantive rights. *In re Haley D.*, 2011 IL 110886, ¶ 69.

¶ 25    In addition, the standard for vacating a default judgment under section 2-1301(e) of the Code is "less onerous" than that under section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2016)). *First National Bank of Blue Island v. Board of Managers of Faulkner House Condominium Ass'n*, 252 Ill. App. 3d 139, 143 (1993); accord *Andreasen v. Suburban Bank of Bartlett*, 173 Ill. App. 3d 333, 340 (1988); see also 735 ILCS 5/2-1401 (West 2016). Defendants are generally not required to establish "a meritorious claim or defense *** [or] due diligence [and] good cause for *** delay" to obtain a vacatur of a default judgment under section 2-1301(e). *First National Bank*, 252 Ill. App. 3d at 143; accord and compare *Andreasen*, 173 Ill. App. 3d at 340.  A party's meritorious defense and reasonable excuse for untimeliness are relevant, but not outcome-determinative, considerations for setting aside a default judgment under section 2-1301(e). *McCluskey*, 2013 IL 115469, ¶ 16; accord *Haley D.*, 2011 IL 110886, ¶ 57; see also *Andreasen*, 173 Ill. App. 3d at 340.

¶ 26    When presented with a timely motion to set aside a default judgment under section 2-1301(e), the "overriding question[s]" for the trial court are " 'whether or not substantial justice is being done between the litigants and whether it is reasonable, under the circumstances, to compel

10

the other party to go to trial on the merits.' "[6] *McCluskey*, 2013 IL 115469, ¶ 16 (quoting *Haley D.*, 2011 IL 110886, ¶ 69). The trial court must balance the severity of the penalty for the defendant-defaulter and the attendant hardship on the plaintiff if required to proceed to trial. *Id.* ¶ 17. "What is just and proper" in this context must be decided on the facts of a particular case, not by a hard and fast rule applicable to all situations regardless of the outcome. *Id.* (quoting *Widicus v. Southwestern Electric Co-op., Inc.*, 26 Ill. App. 2d 102, 109 (1960)). Nevertheless, the moving party has the burden of establishing sufficient grounds for setting aside the default judgment. *In re Marriage of Ward*, 282 Ill. App. 3d 423, 432 (1996). While a section 2-1301(e) motion need not be supported by affidavits, good cause must be shown. *Baltz v. McCormack,* 66 Ill. App. 3d 76, 77-78 (1978).

¶ 27    Here, defendants' emergency motion was based on requesting the opportunity to mount a meritorious and vigorous defense and the existence of a pending offer to purchase at the time the motion was filed. The trial court did not explain its ruling or issue factual findings on the question of substantial justice. Thus, we presume the trial court properly balanced the severity of the penalty for defendants and the attendant hardship to First Midwest Bank and found that substantial justice did not require First Midwest Bank to proceed toward trial. See *McCluskey*, 2013 IL 115469, ¶¶ 16-17; *Haley D.*, 2011 IL 110886, ¶ 69; *Golf Trust of America, L.P. v. Soat*, 355 Ill. App. 3d 333, 337 (2005) ("[T]he failure to make a specific finding is not grounds for reversal; instead, in reviewing a judgment, this court will assume that all issues and controverted facts were found in favor of the prevailing party.").

---

[6] The order of default was entered in March 2018 and the default judgment of foreclosure and sale was entered in April 2018. An order of default and a default judgment of foreclosure and sale are not the same. See *Haley D.*, 2011 IL 110886, ¶ 64. An order of default is nonfinal and precedes a default judgment because "additional steps must normally be taken before judgment is actually entered." *Id.*

¶ 28    As noted above, we review the trial court's decision here under an abuse of discretion standard. See *Hansen*, 2016 IL App (1st) 143720, ¶ 14. "A trial court abuses its discretion when it 'acts arbitrarily without the employment of conscientious judgment or if its decision exceeds the bounds of reason and ignores principles of law such that substantial prejudice has resulted.' " *Id.* (quoting *Marren Builders, Inc. v. Lampert*, 307 Ill. App. 3d 937, 941 (1999)).

¶ 29    The posture of this case in September 2018 when the trial court denied the motion to vacate the default was that the pending sale, which was the basis of the emergency motion, no longer existed. The failed sale mooted the reasons argued to vacate the default judgment. It was the second failed sale while the action was pending. While defendant's were not required to establish diligence and a meritorious defense, such considerations are relevant in determining whether to grant a section 2-1301(e) motion to vacate. See *McCluskey*, 2013 IL 115469, ¶¶ 16, 27. Defendants here made no attempt to submit to the trial court a meritorious defense to plaintiff's action nor an excuse for their lack of diligence in appearing and protecting their interests. The record reflects that as early as July 2017, Duff met with the court appointed receiver and was aware of the proceedings. Yet, nothing was presented to explain why there was no appearance, answer, or defense. Presumably, the trial court was aware that as of the date of the motion hearing, the defendants had been out of business for over 14 months. The trial court was also aware that no payments had been made for 18 months. In addition, the trial court was also aware that two efforts to privately sell the property had failed.

¶ 30    Reviewing the context of the record here does not lead us to conclude that the trial court acted arbitrarily, that the trial court's decision exceeded the bounds of reason, or that the trial court ignored principles of law in making its decision. See *Hansen*, 2016 IL App (1st) 143720, ¶ 14. Merely because a result appears harsh does not equate to abuse of discretion. Notably, our

Supreme Court in *McCluskey*, after deciding whether the motion to vacate should be reviewed under the civil procedure standard or the mortgage foreclosure standard, upheld a trial court denial of a motion to vacate default on the basis of a failed loan modification. See *McCluskey*, 2013 IL 115469, ¶ 31. We find based upon the facts of this case that the trial court did not abuse its discretion. Accordingly, we affirm the trial court's ruling, which denied defendants' motion to vacate the order of default and the default judgment of foreclosure and sale. However, the judgment of foreclosure and the record before us, do not reflect consideration by the trial court of the proper credit to be given for the assets received by the bank prior to the judgment of foreclosure. We therefore remand to the trial court to properly account and credit the defendant for all the assets received by the bank before entry of the judgment.

¶ 31                                III. CONCLUSION

¶ 32        For the foregoing reasons, we affirm the judgment of the circuit court of Will County denying defendant's motion to vacate the order of default and the judgment of foreclosure and sale; and remand to the trial court to conduct an accounting consistent with this order.

¶ 33        Affirmed in part and remanded.

¶ 34        JUSTICE WRIGHT, dissenting:

¶ 35        Default judgments "punish [a defendant] for disobeying the court's command" and " 'should only be condoned when, as a last resort, it is necessary to give the plaintiff his just demand.' " See *McCluskey*, 2013 IL 115469, ¶ 16 (quoting *Widicus*, 26 Ill. App. 2d at 109); see also *Haley D.*, 2011 IL 110886, ¶ 69. I respectfully disagree this case is at a point of last resort.

¶ 36        Defendants' section 2-1301(e) motion to vacate was undisputedly timely because it was filed before the entry of a final order in this case. The case law establishes that the order confirming the sale, not the judgment of foreclosure, is the final and appealable order in a

13

mortgage foreclosure proceeding.[7] See 735 ILCS 5/2-1301(e) (West 2016); *McCluskey*, 2013 IL 115469, ¶ 12; accord *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 11. Hence, this case is far from being resolved since, to date, there has been neither a sale of the commercial property nor an order from the trial court confirming such a sale.

¶ 37    Further, under the case law, a timely section 2-1301(e) motion to vacate a default judgment may be granted absent defendants' demonstration of a meritorious defense and reasonable excuse, due diligence, or good cause for the delay in formally appearing or answering the complaint. See *McCluskey*, 2013 IL 115469, ¶ 16; *Haley D.*, 2011 IL 110886, ¶ 57; *First National Bank*, 252 Ill. App. 3d at 143; *Andreasen*, 173 Ill. App. 3d at 340. Nonetheless, although not required, defendants did assert a potentially meritorious defense *and* have described plausible explanations for their delay in formally appearing or filing an answer. For example, defendants alleged the potential for plaintiff to recover monetary damages under counts I through IV of First Midwest Bank's complaint represented a "complete defense" that could avoid the necessity of a default judgment of foreclosure and sale, as requested in count V of First Midwest Bank's complaint. Defendants have also suggested the court-ordered receivership, created *before* Prime and Duff were served with process, impeded their ability to secure the funds necessary to retain counsel in this lawsuit. As stated above, defendants were not required, as a prerequisite to obtaining a vacatur of the order of default and default judgment of foreclosure and sale under section 2-1301(e), to provide a meritorious defense or plausible explanation for failing to formally appear or file an answer. The fact that they have done so should be weighed in their favor.

---

[7]This is true when, as is the case here, there was no Rule 304(a) finding in the judgment of foreclosure. See *McCluskey*, 2013 IL 115469, ¶ 12.

14

¶ 38    Most importantly, by allowing the default judgment of foreclosure and sale to stand, defendants are subject to a severe procedural penalty that far outweighs any minimal hardship plaintiff might suffer, with a receiver in place, by the added delay preceding a confirmation of sale. With the default judgment of foreclosure and sale, defendants have lost all interest in the commercial property that housed their business. Moreover, depending on the amount of the accepted bid at the foreclosure sale, defendants could be subject to a significant monetary judgment due to Duff's guaranties for the full repayment of the promissory notes referenced in counts I through IV of First Midwest Bank's complaint. This outcome, arising from procedural default, rather than from an agreement of the parties or an adjudication on the merits, constitutes a severe penalty that is likely to result in a catastrophic financial loss for defendants.

¶ 39    By contrast, since the commercial property has not been sold and there has been no final order confirming such a sale, the hardship to First Midwest Bank stems merely from the possibility that they will have to proceed toward presenting evidence on the merits at a trial. This is not an unforeseeable or unanticipated circumstance. Again, First Midwest Bank's interests in the commercial property remain protected by the receivership.

¶ 40    After balancing the severity of the penalty to defendants against the minimal hardship to First Midwest Bank, I conclude the outcome clearly favors defendants. See *McCluskey*, 2013 IL 115469, ¶¶ 16-17; *Haley D.*, 2011 IL 110886, ¶ 69. I would hold the trial court abused its discretion by not adhering to our supreme court's liberal policy of allowing timely section 2-1301(e) motions to vacate. See *McCluskey*, 2013 IL 115469, ¶ 16; 4 Richard A. Michael, Illinois Practice, Civil Procedure Before Trial § 42:5 (2d ed. 2011). As a result, I would vacate the order of default and default judgment of foreclosure and sale before remanding the case for further proceedings.

15

¶ 41   Therefore, I respectfully dissent.